MARTIN CASWELL, ET AL., *Respondents*, v. PIERCE COUNTY, ET AL., *Appellants*.

*John W. Ladenburg, Prosecuting Attorney*, and *Jill Guernsey* and *Eileen M. McKain, Deputies*; and *William T. Lynn* and *Margaret Y. Archer* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for appellants.

*Michael W. Gendler* of *Bricklin & Gendler,* for respondents.

GROSSE, J. — The validity of a county's Interim Urban Growth Area (IUGA) ordinance is an issue subject to review by a growth management hearings board and cannot be challenged in superior court under the Land Use Petition Act (LUPA). As a result, where, as here, a county approves a development outside its urban growth boundary that may be considered urban in nature, but the county's action is in accordance with its IUGA ordinance, a petitioner may not challenge the ordinance under LUPA on the basis that the ordinance is contrary to the Growth Management Act (GMA). We reverse the superior court's ruling to the contrary and reinstate the hearing examiner's determination.

FACTS

On March 15, 1994, Fir Grove Partnership (Fir Grove) filed an application for a conditional use permit to expand its existing mobile home park in rural Pierce County. At the time of its application, the proposed development was within Pierce County's general-rural zone.[1] The zone allowed low density development, which included mobile home parks with densities not to exceed 10 units per acre. Fir Grove's proposed development had a density of 2.8 units per acre.

Also in effect during this time was a county ordinance designating its IUGA,[2] adopted pursuant to the GMA.[3] Ex-

---

[1]Pierce County Ordinance No. 93-84S2.

[2]Pierce County Ordinance No. 93-91S.

[3]RCW 36.70A.

hibit "B," finding of fact 15 of the ordinance, specifically stated that the general-rural zone, along with several other interim development regulations, was adopted in anticipation and in furtherance of the GMA and would remain in effect during the interim period.

On January 31, 1997, a Pierce County hearing examiner concluded that Fir Grove's proposed mobile home park would not have been permitted under then existing regulations because its approval would result in an urban density outside the IUGA. But the hearing examiner also found that Fir Grove's application was complete on March 15, 1994 and, as a result, the conditional use permit was vested and subject to the development regulations in effect as of that date. The hearing examiner approved the conditional use permit, stating that the development was authorized by the general-rural zone, which took precedence over Pierce County's Interim Growth Management Policies and Comprehensive Plan. The hearing examiner also approved Fir Grove's May 28, 1996 request for a variance to Pierce County's stream buffer requirements based on the conclusion that the variance would not adversely affect either the 1962 or 1994 comprehensive plan.

The Caswells, adjacent property owners, sought review of the hearing examiner's decision in King County Superior Court under LUPA.[4] The court concurred with the hearing examiner's conclusion that the proposed development constituted urban growth outside Pierce County's IUGA. The court also concurred that, notwithstanding Fir Grove's request for a variance, the application for a conditional use permit was complete on March 15, 1994, and Fir Grove had a vested right to have the application evaluated under then existing development regulations. But the court reversed, holding that the hearing examiner committed an error of law by failing to consider that the proposal was contrary to Pierce County's IUGA ordinance and the GMA.

[4]RCW 36.70C.130.

Pierce County and Fir Grove appeal.

## DISCUSSION

### I. Scope of Review

■ The Caswells have not cross-appealed the hearing examiner's conclusion, and the superior court's concurrence, that Fir Grove's application was complete upon filing and the application vested notwithstanding the requested variance. As a result, we do not address those issues.[5] Our review is limited, therefore, to the issues upon which the superior court reversed, i.e., the court's concurrence with the hearing examiner's conclusion that the proposed development constituted urban density outside Pierce County's IUGA, and the court's determination that the hearing examiner failed to consider the fact that the proposed development, for the above cited reason, was contrary to Pierce County's IUGA ordinance and the GMA.

### II. The Caswells cannot challenge Pierce County's IUGA ordinance under LUPA

The Legislature established a precise process by which its policies under the GMA are to be implemented and procedures for review of local legislative decisions in furtherance of those policies. The GMA requires counties to adopt a Comprehensive Growth Management Plan, which, among other things, designates urban growth areas.[6] In the development and amendment of those plans, the "GMA expressly provides for 'early and continuous public participation[.]' "[7]

The GMA further establishes growth management hearings boards. The boards have the power to hear and

[5]*See Honcoop v. State*, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988) (the Supreme Court refused to consider the propriety of a Court of Appeals' holding where respondent failed to assign error to the holding).

[6]*King County v. Central Puget Sound Growth Management Hearings Bd.*, 138 Wn.2d 161, 167, 979 P.2d 374 (1999).

[7]*Id.* at 167 (quoting RCW 36.70A.140).

determine petitions alleging, inter alia, that a county is not in compliance with the requirements of the GMA.[8] RCW 36.70A.280 permits those persons who participated before the county regarding the matter upon which review is requested, or persons aggrieved or adversely affected by the county's actions, to file petitions for review with the board.

This case arises from a LUPA petition for review of a hearing examiner's ruling. LUPA is generally "the exclusive means of judicial review of land use decisions" by local jurisdictions.[9] But LUPA does not apply to decisions subject to review by a growth management hearings board.[10] Therefore, before conducting an analysis of the issues before this court, we must examine the nature of the Caswells' allegations and the extent to which Pierce County's actions could have been reviewed by the Central Puget Sound Growth Management Hearings Board.

The Caswells claim that Pierce County's IUGA ordinance fails to comply with the GMA. RCW 36.70A.110(5) specifically states that a county's IUGA ordinance may be appealed "to the appropriate growth management hearings board under RCW 36.70A.280." Granted, the Caswells may not have standing at this juncture to appeal to the board because they failed to file a petition for review within 60 days after publication of Pierce County's IUGA ordinance.[11] But whether the Caswells had standing is not the focus of our inquiry.

■ The issue under the LUPA exception in question is

---

[8]RCW 36.70A.280(1)(a).

[9]RCW 36.70C.030(1).

[10]RCW 36.70C.030(1)(a)(ii). *See also King County v. Central Puget Sound Growth Management Hearings Bd.*, 138 Wn.2d at 182 n.9 (rejecting "Friends' additional contention that the Land Use Petition Act (LUPA) requires the court to independently review whether an underlying urban designation in a comprehensive plan is consistent with the GMA.").

[11]RCW 36.70A.290(2).

whether the local land use decision itself is subject to review by a growth management hearings board.[12]

(1) This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to:

(a) Judicial review of:

. . . .

(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board or the growth management hearings board[.]

Whether an individual petitioner has standing to assert a claim based on that decision is immaterial. As a result, the issue of whether Pierce County's IUGA ordinance complies with the GMA should have been brought before the Central Puget Sound Growth Management Hearings Board and may not be reviewed by way of a LUPA petition.[13]

We recognize that our holding here is in apparent conflict with the recent opinion in *Association of Rural Residents v. Kitsap County*.[14] In that case, distinguishing a Washington Supreme Court opinion holding that a local zoning ordinance trumps a more general GMA definition of urban growth, this court stated:

Here, we are faced not with a difference between a local plan and local regulations, but a difference between local regulations and a state statute both defining in their different ways where urban growth is permissible and where it is not permis-

---

[12]RCW 36.70C.030.

[13]*See King County v. Central Puget Sound Growth Management Hearings Bd.*, 138 Wn.2d at 182 n.9 ("The lawfulness of a county's UGA designation may not be reviewed in a LUPA petition because the challenged county action is subject to review by the Board."). *See also* RCW 36.70C.030(1)(a)(ii).

[14]*Association of Rural Residents v. Kitsap County*, 95 Wn. App. 383, 974 P.2d 863, *review granted*, 138 Wn.2d 1008 (1999).

sible. Where a local ordinance cannot be harmonized with a conflicting statute, the statute prevails.[15]

The court concluded that Kitsap County's pre-GMA zoning and planned unit development ordinance, which permitted urban growth outside the county's IUGA, was not controlling because it conflicted with the GMA's definition of urban growth.[16] The court did not reach the issue of whether the development also conflicted with the county's IUGA ordinance, which was on remand from the Central Puget Sound Growth Management Hearings Board as contrary to the GMA. And most importantly, the court did not specifically address the scope of review permitted under LUPA. In fact, a review of the briefs filed in the case indicates that the issue was not raised on appeal.

Because the issue of the scope of review permitted under LUPA was not directly addressed in *Association of Rural Residents*, that case is not controlling. The Legislature established a process for the review of development regulations under the GMA, and there is no question that the issue before us would have been an appropriate subject for a growth management hearings board. To the extent the Caswells argue that Pierce County's IUGA conflicts with the GMA, they have chosen the wrong forum.

III. Pierce County's IUGA ordinance specifically references and further implements the county's general-rural zoning ordinance, which permits the type of development Fir Grove proposes

A court may grant relief under LUPA only where, after review of the record before the hearing examiner, a petitioner establishes:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of

---

[15]*Id.* at 395.

[16]*Id.* at 395-96.

the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.[17]

Notwithstanding Fir Grove's argument that the superior court failed to accord the hearing examiner substantial weight under RCW 36.70C.130(1)(b) in interpreting the Pierce County Code, this case actually turns on the hearing examiner's application of the law under RCW 36.70C-.130(1)(d). The hearing examiner concluded that Fir Grove's proposed development was urban in nature but the general-rural zoning ordinance was applicable and took precedence over the inconsistent Interim Growth Management Policies and Comprehensive Plan. The hearing examiner did not directly consider whether the general-rural zone remained in effect after Pierce County adopted its IUGA ordinance, which is itself a development regulation.[18]

Citing the GMA's prohibition on urban development outside an IUGA, and concurring with the hearing examiner's conclusion that Fir Grove's proposed development would result in urban density outside Pierce County's IUGA, the superior court held that the hearing examiner's approval of Fir Grove's conditional use permit violated Pierce County's IUGA ordinance and the GMA. The court, in effect, conducted its own evaluation of Pierce County's IUGA ordinance and concluded that the proposed develop-

---

[17]RCW 36.70C.130(1).

[18]*See* Exhibit "B" to Ordinance No. 93-91S, finding of fact 14.

ment was in conflict with the ordinance as a matter of law. Consequently, we must independently examine the ordinance to determine whether Pierce County intended by its enactment to prohibit Fir Grove's development of a mobile home park in the general-rural zone.

Pierce County's IUGA ordinance had the stated purpose of designating interim urban growth areas, areas beyond which urban growth was precluded, and setting forth a process by which Pierce County was to designate final urban growth areas. The ordinance states in relevant part:

> WHEREAS, RCW 36.70A.110(1) requires Pierce County to designate an urban growth area(s) within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature; and
>
> . . . .
>
> BE IT ORDAINED by the Council of Pierce County:
>
> . . . .
>
> Section 2. The interim urban growth areas for Pierce County and the cities and towns within Pierce County are hereby adopted as shown in Exhibit "A" attached hereto and incorporated herein by reference. . . .
>
> . . . .
>
> Section 6. The findings of fact, as set forth in Exhibit "B" are hereby adopted and by this reference incorporated herein.

Exhibit "A" is a large map designating with specificity Pierce County's interim urban growth areas. Exhibit "B" provides in part:

14. The Council finds that Ordinance No. 93-91, designating the Interim Urban Growth Areas is a development regulation pursuant to RCW 36.70A.110(4). The Council further finds that the designation of the Interim Urban Growth Areas supplements and further implements existing development regulations of the County.

15. The Council finds that in anticipation of enactment of the Growth Management Act and in furtherance of its goals,

the County enacted numerous interim development regulations to curb sprawl and manage development while planning could occur. Since 1990, the following interim development regulations have been adopted and remain in place:

. . . .

• General-Rural Zone Created—Ordinance No. 93-84S2.

. . . .

17. The Council finds that the enactment of Ordinance no. 93-84S2 on August 31, 1993, also has a direct effect outside the Interim Urban Growth Areas. This interim development regulation establishes the General Rural Zone and sets 10 acres as the minimum lot size for new development.

Based on our review of the ordinance, it is clear that the Pierce County Council intended to leave in effect the general-rural zone during the interim period as an integral part of its IUGA ordinance. The general-rural zone permits mobile home developments not to exceed 10 units per acre. Therefore, Fir Grove's proposed development was in compliance with the development regulations in effect at the time of its development application.

Accordingly, we reverse and remand to the superior court with the directions that it reinstate the hearing examiner's ruling.

COLEMAN, J., concurs.

BECKER, J. (dissenting) — I respectfully disagree with the disposition of the majority. I would hold that the Caswells properly obtained review of a land use decision by using the Land Use Petition Act (LUPA), and that the superior court was right to reverse the hearing examiner's decision because it permitted an urban growth development outside the Interim Urban Growth Area (IUGA). I would affirm the judgment of the superior court.

Most of the majority opinion elaborates a point that is not in dispute. The lawfulness of a county's designation of an interim urban growth area may not be reviewed in a LUPA petition. RCW 36.70C.030(1)(a)(ii); *King County v. Central Puget Sound Growth Management Hearings Bd.*, 138 Wn.2d 161, 182 n.9, 979 P.2d 374 (1999). But the Caswells are not challenging the lawfulness of Pierce County's designation of the IUGA nor are they claiming that the IUGA conflicts with the Growth Management Act. To the contrary, they *rely* on Pierce County's designation of its IUGA. The IUGA designation is a development regulation, as the majority recognizes and as we held in *Association of Rural Residents v. Kitsap County*, 95 Wn. App. 383, 974 P.2d 863, *review granted*, 138 Wn.2d 1008 (1999). The Caswells contend that Fir Grove's proposal violates the development regulation the County enacted when it excluded the Fir Grove property from the Interim Urban Growth area. This is exactly the kind of challenge that is supposed to be brought under LUPA. It is not subject to review by the Growth Management Board.

Fir Grove contends that the permit granted by the hearing examiner is insulated from judicial review because the County incorporated its preexisting General-Rural Zone ordinance, No. 93-84S2, into its IUGA ordinance. In the General-Rule Zone, mobile home parks up to 10 units per acre are allowed as a conditional use. According to Fir Grove, an attack on the validity of the older ordinance may be subject to review by the Growth Management Board, but it is not a proper subject for a LUPA petition. The flaw in this argument is that the Caswells are not challenging the validity of Ordinance No. 93-84S2. They are challenging a permit. The permit is a land use decision. *See* RCW 36.70C.020(1). It is subject to judicial review under LUPA.

If the General-Rural Zone were the only development regulation applicable to Fir Grove's proposed expansion, then the hearing examiner's decision to grant the permit would have to be affirmed. But it is not the only applicable regulation. The proposal is also subject to the regulation

designating Fir Grove's property as outside the area in which urban growth will be allowed to occur. As the majority recognizes in part III of its opinion, Majority at 201, the real issue in this case is the problem presented when two different development regulations both apply to the same property. The General-Rural Zone ordinance allows the property to have a mobile home park as a conditional use. The IUGA designation allows the property to have development "only if it is not urban in nature." RCW 36.70A.110(1).

I would hold that the proposed mobile home park cannot be permitted outside the IUGA because its density is almost three units per acre—a density that the Hearing Examiner's unchallenged finding recognizes as "an urban density." The Hearing Examiner also found that the project "will result in urban density living outside of the interim urban growth area which violates the spirit and intent of the IGMP (Interim Growth Management Policies). Furthermore, urban density services are not present in the area and the applicant cannot supply them, even though proposing an urban density development."

Having made these findings, the hearing examiner was able to approve the project only because he did not consider the IUGA designation to be a development regulation. In his view, the only applicable regulation was the General-Rural Zone ordinance, and it overrode the interim growth management policies in the comprehensive plan.

The majority acknowledges the hearing examiner's error in failing to regard Pierce County's IUGA designation as a development regulation, see Majority at 201, but the majority nevertheless reinstates the hearing examiner's decision. Majority at 203. Observing that the County left the General-Rural Zone ordinance intact, the majority summarily declares that the County clearly intended to allow mobile home parks to be built outside the IUGA line up to the full 10 units per acre that the General-Rural Zone allows. Majority at 203. This analysis is unpersuasive because it makes no attempt to give effect to the IUGA designation

or to the hearing examiner's unchallenged findings. The effect of an IUGA designation is to preclude urban growth from occurring outside the line. The hearing examiner found that the proposed project, a mobile home park of 2.8 units per acre, is an urban density development that will not be supplied with urban density services.

Local definitions of "urban growth," a key GMA term, will evolve as cities and counties develop their planning and zoning under the Growth Management Act. *See Association of Rural Residents*, 95 Wn. App. at 396. If Pierce County's IUGA ordinance definitely stated that the County does not consider mobile home parks to be urban growth, or does not consider developments of less than three units per acre to be an urban density, the hearing examiner's findings would be subject to challenge as an error of law. But Pierce County's IUGA ordinance does not provide that type of definition. As a result, the hearing examiner's factual finding that the Fir Grove project is urban in character is one to which courts must defer as the best indication of Pierce County's views on the subject.

Contrary to the majority's holding, the ordinances themselves also indicate that the county did *not* intend for the provisions of the General-Rural Zone ordinance to operate without any limitation provided by the IUGA. The ordinance that establishes the General-Rural Zone incorporates a finding that the objectives of the Pierce County Interim Growth Management Policies "will guide the County's decisions affecting land use until the new comprehensive plan is adopted." Ordinance No. 93-84S2, section 5, exhibit E, finding of fact 15. The Council also found that a limitation to 10-acre lots was necessary to "preserve the rural character of Pierce County until further evaluation has occurred and the new comprehensive plan and implementing regulations are adopted." Exhibit E, finding of fact 28. The executive summary of the Interim Growth Management Policies provides that "it is imperative that land use decisions not commit the county to directions inconsistent with statewide growth management objectives."

In addition, in the ordinance designating the IUGA, the County Council found unconditionally that the General-Rural Zone "sets 10 acres as the minimum lot size for new development." Ordinance No. 93-91S, finding of fact 17. The Growth Management Board interpreted this ordinance as manifesting the County's intent to allow growth to occur outside the IUGA only at densities no greater than one unit per 10 acres, and found it acceptable as an interim development regulation because "A density of one unit per ten acres is a rural density." *Tacoma v. Pierce County*, No. 94-3-0001, Central Puget Sound Growth Mgmt. Hr'g's Bd. Decision and Order, at 493 (July 5, 1994). Pierce County should not be heard to say now, in a different forum, that its ordinances actually were intended to allow a development almost 30 times that dense outside the area designated for urban growth.

I would hold, instead, that the County intended its IUGA designation as an additional limitation supplementing the restrictions of the General-Rural Zone. The additional restriction precludes urban growth outside the line. With a density of almost three units per acre, the Fir Grove project is urban growth. The project is outside the urban growth line. Therefore, the permit should be denied. The superior court should be affirmed.

[No. 42629-0-I. Division One. January 31, 2000.]