21 P.3d 1165 (2001)
105 Wash.App. 937
David and Elaine SOMERS; Charles and June Brown; and Sandra Knox, Respondents,
v.
SNOHOMISH COUNTY and Philip Aronson, Appellants.
No. 41710-0-I.
Court of Appeals of Washington, Division 1.
April 23, 2001.
Reconsideration Denied June 5, 2001.
*1166 Patrick Downs, Barbara J. Dykes, Snohomish Cnty PA's Offc, Everett, Dawn Linette Findlay, Bellevue, for Appellant Snohomish County.
Mark Whitcomb Stowe, Woodinville, for Appellant Philip Aronson.
Jennifer A. Dold, Bricklin & Gendler, Seattle, Thomas Ross Bjorgen, Bjorgen, Bauer, Olympia, for Respondents.
Jodi Claire Slavik, Bldg. Industry Assoc., Olympia, Amicus Curiae for Building Industry Assoc. of Washington.
COX, J.
The threshold issue in this appeal by Snohomish County and developer Philip Aronson is whether the trial court had subject matter jurisdiction under the Land Use Petition Act (LUPA) to review the County's decision to approve Aronson's proposed subdivision. Although the appeal of a decision approving a project permit application is generally the type of land use decision that would be subject to review by a superior court under LUPA, the present appeal is not. Rather, it is one in which the underlying issue is whether a pre-existing local zoning ordinance complies with the provisions of the Growth Management Act (GMA). Accordingly, the proper Growth Management Hearings Board (GMHB or "the Board"), rather than the superior court, has exclusive jurisdiction to review the matter. As a result, we vacate the superior court's decision and reinstate the approval of the project permit by the hearing examiner and Snohomish County.
The Legislature enacted the GMA in 1990, and amended the act in 1993 to require that counties designate interim urban growth areas (IUGAs). In October 1993, Snohomish County adopted Ordinance 93-087 establishing the Monroe IUGA.
In August 1994, Philip Aronson submitted an application to the County for preliminary plat approval of a subdivision known as Cromwell Plateau. The proposed subdivision, which is located outside of the Monroe IUGA boundary, consists of 50 single family residential lots on 36.5 acres. The average proposed lot size is 21,000 square feet.
At the time of Aronson's application, his property was within an area zoned by the County as Residential 20,000 (R-20,000). This zoning permitted minimum lot sizes of 20,000 square feet, and was in effect prior to the 1990 enactment of the GMA. No one disputes that the proposed subdivision complied with the requirements of the County's R 20,000 zoning.
In January 1997, the Snohomish County Council affirmed a decision by a County hearing examiner approving the subdivision. The hearing examiner found that Aronson's application was complete on August 17, 1994. He also found that Ordinance 93-087, which established the Monroe IUGA, "does not include a definition of `urban growth' or any other definition or standard [that] would offer direct guidance as to land use densities permissible outside of the IUGA...." Nor, he found, "is there any definition elsewhere in the county code [that] would offer such guidance." The hearing examiner additionally found that the proposed development is located outside the final UGA established by the County Council in 1995.
*1167 On the basis of these and other findings, the hearing examiner concluded that Aronson's application "vested from the applicability of the UGA, but not of the IUGA." He further concluded that the GMA's definition of "urban growth" contains "a quite subjective standard, which requires judgment by the local legislative authority in its adoption of a local comprehensive plan during implementation of the GMA." Because the "regulatory scheme establishing the IUGA...did not establish a definitive standard," and because there were no development regulations to implement the GMA's standard, he approved the proposed subdivision despite its location outside of the IUGA. He based that approval on the fact that the proposed development complied with the R 20,000 zoning ordinance applicable to the property at the time Aronson's application vested in August 1994. The hearing examiner also concluded that the proposed project complied with SEPA and other governing requirements.
Neighboring landowners David and Elaine Somers, Charles and June Brown, and Sandra Knox (collectively "Somers"), sought review of the subdivision approval in King County Superior Court under LUPA. The essence of their challenge is that the proposed subdivision constituted "urban growth" contrary to the GMA. They did not raise SEPA or other governing requirements in the appeal.
After concluding that it had subject matter jurisdiction under LUPA, the superior court determined that the Monroe IUGA was a self-executing land use regulation prohibiting urban growth outside its boundaries. The court also held that additional implementing regulations were not needed to make the IUGA effective to prevent urban growth outside its boundaries. In doing so, the court concluded that "[t]he GMA defines `Urban Growth' with detail and specificity in a manner that is not difficult to apply in this case." The court then held that the proposed subdivision constituted urban growth outside of the County's IUGA in violation of the GMA, and reversed the approval of the subdivision.
The County and Aronson appeal.

Subject Matter Jurisdiction
Aronson and the County first argue that the trial court was without subject matter jurisdiction under LUPA to consider the Somers' petition for review to the extent that it raises the question of whether the County's R 20,000 zoning ordinance violates the GMA. We agree.
Whether the trial court had subject matter jurisdiction to consider the Somers' petition is a question of law that we review de novo.[1]
LUPA provides "the exclusive means of judicial review of land use decisions," by local jurisdictions.[2] RCW 36.70C.030(1) states, in pertinent part, that:
This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to:

(a) Judicial review of...
(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board or the growth management hearings board...[3]
A GMHB, in turn, has very limited jurisdiction and "shall hear and determine only those petitions alleging ... [t]hat a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter..."[4] Moreover, a GMHB does *1168 not have jurisdiction to "render a decision on a specific development project," such as an application for preliminary plat approval.[5] "Unless a petition alleges that a comprehensive plan or a development regulation or amendments to either are not in compliance with the requirements of the GMA, a GMHB does not have jurisdiction to hear the petition."[6] "If a GMHB does not have jurisdiction to consider a petition, it must be filed in superior court under LUPA."[7] In determining whether the trial court had subject matter jurisdiction, we must examine the nature of the Somers' allegations and the extent to which the County's actions could have been reviewed by the proper GMHB.[8]
Here, the Somers filed a LUPA petition in superior court to challenge the County's decision approving the subdivision. They do not challenge the Monroe IUGA in their petition. Moreover, the petition does not expressly challenge the R 20,000 zoning that served as the basis for the County's approval of the proposed plat. But Aronson and the County argue that the Somers are collaterally challenging the County's R 20,000 zoning to the extent that it permits "urban density" outside the Monroe IUGA, thereby raising GMA compliance issues that are beyond the proper scope of a LUPA appeal.
Aronson and the County focus, in part, on paragraph 7.1 of the LUPA petition to support their argument. That paragraph provides as follows:
The County Council failed to apply the laws in effect at the time they took action to approve the Cromwell Plateau preliminary plat. Snohomish County adopted an interim urban growth boundary on October 25, 1993almost a year in advance of the filing of the application for the Cromwell Plateau development. A designation of the interim urban growth area (pursuant to the requirements of the Growth Management Act) precluded "urban growth" (as that term is defined by the Growth Management Act) outside of the designated urban growth area. The Cromwell Plateau development constitutes "urban growth" as that term is defined by the Act. Approval of the Cromwell Plateau development was contrary to the requirements of the Growth Management Act and the County's own interim urban growth area designation.[9]
Based on the above highlighted petition language, certain colloquy by counsel for the Somers before the hearing examiner below, and other pleadings, they assert that the Somers' true complaint is with the underlying R 20,000 zoning ordinance to the extent that it violates the GMA by permitting urban growth density outside of the IUGA that was in effect in August 1994. When the trial court reversed the approval of the subdivision on the basis that the development constituted "urban growth" outside of the IUGA in violation of the GMA, they argue that the court exceeded the scope of its jurisdiction because the GMHB has exclusive jurisdiction to determine whether a development regulation, such as a local zoning ordinance, complies with the GMA.[10]
This Court's decision in Caswell v. Pierce County,[11] provides a useful analytical framework to address the issue now before us. A petitioner cannot use the LUPA process to raise issues that should have been brought before the GMHB.[12] In evaluating *1169 the scope of review permitted under LUPA, Caswell recognized the need to examine the underlying nature of the plaintiffs' allegations to determine "the extent to which [the] County's actions could have been reviewed by the ...Growth Management Hearings Board."[13] In Caswell, a developer applied for a conditional use permit to expand its existing mobile home park.[14] A county ordinance designating an IUGA was in effect at the time of the application, as was a local zoning ordinance that allowed the type of development proposed.[15] The IUGA ordinance specifically incorporated and further implemented the local zoning ordinance.[16] The hearing examiner approved the permit on the grounds that the county's local zoning ordinance authorized the development and took precedence over the County's "Interim Growth Management Policies and Comprehensive Plan."[17] Adjacent property owners appealed under LUPA, and the trial court reversed.[18] It determined that the hearing examiner erred by failing to consider the fact that the proposed development was contrary to the County's IUGA ordinance and the GMA.[19] This Court held that the plaintiffs should have brought the issue of whether the County's IUGA ordinance complied with the GMA before the GMHB, and concluded that they could not challenge the IUGA by way of a LUPA petition.[20]
Here, as in Caswell, the Somers raise an issue that is beyond the proper scope of a LUPA appeal. Although the Somers do not challenge the Monroe IUGA, they do in fact challenge the underlying R-20,000 zoning ordinance on the ground that its application to the proposed plat allegedly violates the GMA. That zoning ordinance allowed Aronson's development to proceed at a density that the Somers argue constitutes impermissible "urban growth" outside of the IUGA. Although the Somers' LUPA petition does not expressly challenge the underlying zoning as contrary to the GMA, it does so implicitly.
During questioning at oral argument, counsel for the Somers had to concede that the substance of their position is that, to the extent the County's R-20,000 zoning permits urban growth outside the IUGA, Cromwell Plateau (or any other development) is not permitted under the GMA. No matter how they attempt to otherwise characterize their challenge, the Somers' real argument is that the County failed to comply with the GMA when it applied a pre-existing ordinance that permitted urban densities outside of the IUGA. The question of whether a county is in compliance with the GMA is an issue over which the GMHB has exclusive subject matter jurisdiction.[21]
The Somers rely on Citizens v. Mount Vernon,[22] for the proposition that a GMHB "cannot render a decision on a specific development project" such as the one at issue here.[23] In Mount Vernon, a group of citizens commenced a LUPA action to challenge a decision by the Mount Vernon City Council approving a rezone and a specific development project.[24] The citizens argued that approval of the projects was inconsistent with existing zoning regulations and with the comprehensive plan adopted under the GMA.[25] The court determined that the Citizens challenge "does not involve the issue of whether the Mount Vernon City Council properly *1170 complied with the GMA, but rather involves the effect of the comprehensive plan on specific land use decisions."[26] Because the Board does not have jurisdiction to "render a decision on a specific development project," the Court concluded, the "[c]itizens properly brought the issue to the superior court for judicial review."[27]
Here, however, the Somers do not and cannot allege that the project conflicts with the County's underlying R-20,000 zoning. Because the citizens in Mount Vernon argued that the project conflicted with the underlying zoning as well as with the GMA, their petition did not have the effect of challenging the underlying zoning as inconsistent with the GMA. Accordingly, Mount Vernon is not controlling in this case.
Citing Skagit Surveyors,[28] the Somers also argue that the GMHB "could only have jurisdiction over a challenge to the [pre-GMA] R-20,000 zoning if the challenge were raised within 60 days of publication of the adoption of the zoning designation."[29] They misread the holding in that case. The Skagit court simply recognized that the 60 day limitations period, codified at RCW 36.70A.290(2), could never be met in a challenge to a pre-GMA ordinance.[30] But the court nevertheless determined that the GMHB has the authority to determine whether a county that continues to enforce a pre-existing ordinance is in compliance with the Act.[31]
In Skagit Surveyors, our Supreme Court overturned a GMHB's decision invalidating a pre-GMA zoning ordinance, and concluded it only had the authority to recommend that the Governor impose economic sanctions against the county.[32] The Court concluded that the GMA "grants the boards the authority to determine that a county which has failed to comply with the Growth Management Act and which continues to enforce its preexisting ordinances is not in compliance with the Act."[33] But the Court determined that the Board's authority did not arise from RCW 36.70A.290(2), the 60-day statute of limitations, which provides that:
All petitions relating to whether or not an adopted comprehensive plan, development regulation, or permanent amendment thereto, is in compliance with the goals and requirements of this chapter ... must be filed within sixty days after publication by the legislative bodies of the county or city.[34]
The Court held that "[a] pre-Act ordinance could never be challenged under this section of the Act because the 60-day limitation period could not be met in such a case."[35] The Court interpreted this section as limiting "a board's authority to consider a challenge to a particular plan or development regulation to those plans and regulations that are enacted after the effective date of the Growth Management Act."[36]
Nevertheless, the court ultimately recognized that a GMHB has the authority to look to pre-Act ordinances to determine whether the county was otherwise in compliance with the Act, but that that authority arose from RCW 36.70A.280(1).[37] That statute provides that "[a] growth management hearings board shall hear and determine only those petitions alleging...[t]hat a state agency, county, or *1171 city planning under this chapter is not in compliance with the requirements of this chapter...."[38]
In short, we read Skagit Surveyors to mean that if the Somers had a complaint with the densities permitted by the pre-existing R-20,000 zoning ordinance, they should have brought that matter to the GMHB, not the superior court. The GMHB has the "authority to determine that a county [that] has failed to comply with the Growth Management Act and [that] continues to enforce its pre-existing ordinances is not in compliance with the Act."[39]
Aronson and the County also argue that the Somers are now precluded from appealing to the Board because they have missed the applicable statute of limitations. The County specifically asserts that after it "designated the Monroe IUGA and decided to retain its R-20,000 zoning to implement the IUGA, [the Somers] had 60 days to appeal this decision to the Hearings Board pursuant to RCW 36.70A.290(2)."[40] We need not decide whether this statute or any other now bars the Somers from applying for relief to the GMHB. But we do express some concerns with the position stated by the County.
It is unclear from the record before us whether the County decided to retain the R-20,000 zoning to implement the IUGA. Unlike Caswell, the County's IUGA ordinance here does not mention or adopt any pre-existing local zoning ordinances to serve as implementing development regulations.[41] Thus, there is a question as to whether the proper statute of limitations begins to run in the absence of notice of such action by the County.
To the extent that the County's argument has validity, this is a potential trap for the unwary. All should be on notice that, once a county draws its IUGA, zoning outside the boundary that conflicts in any way with the GMA may be appealable to the appropriate GMHB. That may be the case even without a specific project to trigger the inquiry, as in this case.
Because we hold that the trial court lacked subject matter jurisdiction under LUPA, we need not address the remaining arguments of amicus or the parties on the substantive issues the trial court decided.

Motions
Aronson filed a motion for staying the statutorily imposed deadline for recording a final subdivision plat of Cromwell Plateau. The County has informed Aronson that, under RCW 58.17.140, his preliminary plat approval will automatically expire on January 6, 2002, unless he "makes a written request for a one year extension at least 30 days prior" to that date, and the director of the PDS concludes that Aronson "has attempted in good faith to submit the final plat within the five-year period." Aronson argues that the five year period, as well as any extension, may expire before the courts resolve this appeal and before he can complete the special conditions contained in his preliminary plat approval.
Because we have decided this case well in advance of the January 6, 2002 deadline, we deny the motion as premature and without prejudice to any party raising the issue again at an appropriate time and with the appropriate court. We also deny as moot Aronson's motion on the merits.
We vacate trial court's decision, and reinstate the County's approval of the proposed subdivision.
COLEMAN and BAKER, JJ., concur.
NOTES
[1] In re Marriage of Thurston, 92 Wash.App. 494, 497, 963 P.2d 947 (1998), review denied, 137 Wash.2d 1023, 980 P.2d 1282 (1999).
[2] RCW 36.70C.030.
[3] Italics ours.
[4] RCW 36.70A.280(1)(a).

RCW 36.70A.280(1) provides in full that:
A growth management hearings board shall hear and determine only those petitions alleging either:
(a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; or
(b) That the twenty-year growth management planning population projections adopted by the office of financial management pursuant to RCW 43.62.035 should be adjusted.
[5] Citizens for Mount Vernon v. The City of Mount Vernon, 133 Wash.2d 861, 868, 947 P.2d 1208 (1997).
[6] Wenatchee Sportsmen Association v. Chelan County, 141 Wash.2d 169, 178, 4 P.3d 123 (2000) (citing RCW 36.70A.290(2) and RCW 36.70A.280(1)(a)).
[7] Wenatchee, 141 Wash.2d at 178, 4 P.3d 123.
[8] Caswell v. Pierce County, 99 Wash.App. 194, 198, 992 P.2d 534, review denied, 142 Wash.2d 1010, 16 P.3d 1265 (2000).
[9] (Italics ours.)
[10] RCW 36.70A.280(1)(a) (authorizing GMHBs to hear those petitions alleging that a county is not in compliance with the GMA).
[11] 99 Wash.App. 194, 992 P.2d 534, review denied, 142 Wash.2d 1010, 16 P.3d 1265 (2000).
[12] Caswell, 99 Wash.App. at 199, 992 P.2d 534.
[13] Caswell, 99 Wash.App. at 198, 992 P.2d 534.
[14] Caswell, 99 Wash.App. at 195, 992 P.2d 534.
[15] Caswell, 99 Wash.App. at 195, 992 P.2d 534.
[16] Caswell, 99 Wash.App. at 200, 992 P.2d 534.
[17] Caswell, 99 Wash.App. at 196, 992 P.2d 534.
[18] Caswell, 99 Wash.App. at 196, 992 P.2d 534.
[19] Caswell, 99 Wash.App. at 196, 992 P.2d 534.
[20] Caswell, 99 Wash.App. at 199, 992 P.2d 534.
[21] See RCW 36.70A.280(1)(a) (providing that a GMHB shall hear those petitions alleging that a county "is not in compliance with the requirements of this chapter....")
[22] 133 Wash.2d 861, 947 P.2d 1208 (1997).
[23] Mount Vernon, 133 Wash.2d at 868, 947 P.2d 1208.
[24] Mount Vernon, 133 Wash.2d at 865, 947 P.2d 1208.
[25] Mount Vernon, 133 Wash.2d at 868, 947 P.2d 1208.
[26] Mount Vernon, 133 Wash.2d at 868, 947 P.2d 1208.
[27] Mount Vernon, 133 Wash.2d at 868, 947 P.2d 1208.
[28] Skagit Surveyors and Engineers, LLC v. Friends of Skagit County, 135 Wash.2d 542, 958 P.2d 962 (1998).
[29] Brief of Respondents at 12.
[30] Skagit Surveyors, 135 Wash.2d at 559, 958 P.2d 962.
[31] Skagit Surveyors, 135 Wash.2d at 567, 958 P.2d 962.
[32] Skagit Surveyors, 135 Wash.2d at 564, 567, 958 P.2d 962.
[33] Skagit Surveyors, 135 Wash.2d at 567, 958 P.2d 962.
[34] (Italics ours.)
[35] Skagit Surveyors, 135 Wash.2d at 559, 958 P.2d 962 (italics ours).
[36] Skagit Surveyors, 135 Wash.2d at 559, 958 P.2d 962 (italics ours).
[37] Skagit Surveyors, 135 Wash.2d at 566, 958 P.2d 962.
[38] RCW 36.70A.280(1).
[39] Skagit Surveyors, 135 Wash.2d at 567, 958 P.2d 962; RCW 36.70A.280(1) (providing that "[a] growth management hearings board shall hear and determine only those petitions alleging... (a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter...").
[40] Opening Brief of Appellant Snohomish County, at 7-8, n. 19.
[41] See Caswell, 99 Wash.App. at 195-96, 992 P.2d 534 (the county ordinance designating the IUGA "specifically stated that the general-rural zone, along with several other interim development regulations, was adopted in anticipation and in furtherance of the GMA and would remain in effect during the interim period").