Honorable Mary Margaret Haugen State Senator, 10th Legislative District P. O. Box 40410 Olympia, WA 98504-0410
Dear Senator Haugen:
By letter previously acknowledged, you have requested an opinion on the following questions, which we have paraphrased slightly for clarity:
 1. Is siting a wetlands mitigation bank subject to the Growth Management Act (GMA), including the GMA provisions relating to the maintenance and enhancement of the agriculture industry and the protection of lands designated as agricultural lands of long-term commercial significance?
 2. If, under either the pilot rule or a final adopted rule, the Department of Ecology certifies a proposed wetlands mitigation bank on land designated as agricultural land of long-term commercial significance, is a county legally obligated to permit a wetlands mitigation bank, regardless of the above GMA requirements? *Page 2 
 3. Does certification of a wetlands mitigation bank by the Department of Ecology make the GMA and the State Environmental Policy Act (SEPA) inapplicable?
 4. To what degree does certification of a wetlands mitigation bank by the Department of Ecology have to comply with the requirements of the GMA?
 BRIEF ANSWERS
1. The GMA provisions concerning agricultural lands apply to counties and cities when they adopt development regulations and comprehensive plans. When a city or county makes a project-specific permitting or siting decision connected to a wetlands mitigation bank, the local government applies all relevant development regulations. Therefore, the GMA provisions relating to the maintenance and enhancement of the agriculture industry and the protection of agricultural lands of long-term commercial significance do not directly apply to siting or permitting a wetland mitigation bank, but are reflected in the regulations that do apply.
2. Certification of a wetlands mitigation bank by Ecology does not legally obligate a county to issue required permits for the bank, because Ecology certification does not eliminate county land use permitting authority. Counties retain the authority to require consistency with comprehensive plans and development regulations.
3. Ecology's certification of a wetlands mitigation bank does not make the GMA or SEPA inapplicable. The GMA is not directly applicable to project-specific decisions about wetland mitigation banks, although it is applicable to city and county comprehensive plans and development regulations. SEPA is applicable to government actions connected to the wetlands mitigation bank, because there is no relevant SEPA exception.
4. The substantive provisions of the GMA do not apply to Ecology certification of a wetlands mitigation bank. Therefore, such certification is not required to comply with the GMA.
 ANALYSIS
Background — Wetlands Mitigation Banking and RCW 90.84
Wetlands are regulated and protected in this country because they perform significant functions in the human and natural environment. For example, wetlands improve water quality, absorb excess waters to lessen flooding, and provide habitat for wildlife.[1] *Page 3 
The important role of wetlands is reflected in the GMA, RCW 36.70A. The GMA classifies wetlands as critical areas to be designated and protected in local planning and land use regulations. See
RCW 36.70A.030(5) (defining critical areas to include wetlands). Seealso RCW 36.70A.030(21) (defining wetlands); RCW 36.70A.170(d) (requiring designation of critical areas by local government); RCW 36.70A.172(1) (requiring protection of the functions and values of critical areas).
A number of state and federal agencies have mitigation requirements when development destroys or impairs wetlands. For example, compensatory mitigation techniques have been developed to sustain or improve watershed functioning which advances the purposes of the Clean Water Act to"restore and maintain the chemical, physical, and biological integrity of the Nation's waters" . Compensatory Mitigation for Losses of Aquatic Resources, 71 Fed. Reg. 15520-01, 15522 (Mar. 28, 2006) (to be codified at 33 C.F.R. pts. 325, 332; 40 C.F.R. pt. 230) (quoting33 U.S.C. § 1251(a)). Such compensatory mitigation may require a developer to create or enhance off-site wetlands as a condition of development. This type of mitigation requirement provides the incentive for wetlands mitigation banks.
In 1998, the Legislature enacted RCW 90.84, authorizing and supporting wetlands mitigation banks as an approved tool for mitigating unavoidable impacts to wetlands. RCW 90.84.005. RCW 90.84.010(5) defines a"wetlands mitigation bank" as a site where wetlands are restored, created, enhanced, or in exceptional circumstances, preserved expressly for the purpose of providing compensatory mitigation in advance of authorized impacts to similar resources.
The identified purposes for such wetland mitigation banks include: (1) Maintaining ecological functions in a watershed by consolidating compensatory mitigation into a single large parcel rather than smaller separate parcels; (2) Increasing long-term successful mitigation by bringing together financial resources, planning, and scientific expertise not otherwise practicable for single projects; (3) Increasing certainty of successful mitigation and reducing temporary losses of wetlands using mitigation banks that are implemented and functioning in advance; and (4) Reducing permit processing times and allowing more cost-effective mitigation. See generally RCW 90.84.005 (intent section describing the purposes of the chapter).
A"wetlands mitigation bank" functions by describing how wetlands will be restored, created, enhanced, or preserved in a"banking instrument." That instrument documents"agency and bank sponsor concurrence on the objectives and administration of the bank" and"describes in detail the physical and legal characteristics of the bank, including the service area, and how the bank will be established and operated." RCW 90.84.010(1)."State agencies and local governments may approve use of credits from a bank for any mitigation required under a permit issued or approved by that state agency or local government to compensate for the proposed impacts of a specific public or private project." RCW 90.84.040(2)."Credit" means a unit of trade representing the increase in the ecological value of the site, as measured by acreage, functions, and/or values, or by some other assessment method." RCW 90.84.010(3). The mitigation credits created by a bank can be assigned to developers or other persons who might be *Page 4 
required to provide off-site wetland mitigation. See generally WAC173-700-352 (2001 proposal/pilot rule).
The role of Ecology is roughly analogous to a bank auditor, who evaluates whether the bank in fact creates mitigation credits. Based on a review process, Ecology"certifies" a wetland mitigation bank by approving its"banking instrument." RCW 90.84.040(1). The local jurisdiction where the bank is to be located also is required to sign the banking instrument. Id. Based on the certification, the state and local government indicate that the credits to be created by a particular bank will be available for use as compensatory mitigation. RCW 90.84.050. In this way, a certified wetlands mitigation bank would assist developers, local government, and the environment. A person required to perform mitigation may efficiently and quickly establish — through the bank — that he or she can and will perform required off-site mitigation. Similarly, a regulatory or permitting body avoids the difficulty of individualized analysis and auditing of such mitigation. The intended result is more efficient and effective mitigation.
Pursuant to RCW 90.84.030, Ecology developed rules for the statewide wetlands bank certification program. After an 18-month negotiated rule-making process, Ecology published a draft rule for public review and comment in January 2001. The rule was labeled as WAC 173-700, but it has never been formally adopted and does not appear in the Washington Administrative Code. Ecology treats its draft as a"pilot rule" under the Administrative Procedures Act, which allows an agency to apply a rule to volunteers, working out details before final adoption. See RCW 34.05.313
(authorizing pilot rules).
Ecology initially delayed application of the pilot rule, citing budget constraints; it subsequently withdrew the rule on May 30, 2002. WSR 02-12-058. Ecology, however, began testing the pilot rule after the 2004 Legislature appropriated funds for fiscal year 2005. Since 2005, Ecology has used an advisory group to select six banks to participate in the pilot program and has used the process outlined in the draft rule to evaluate the six bank proposals. As contemplated by the pilot rule, Ecology relies on an interagency team (the Mitigation Bank Review Team (MBRT)) to conduct technical review of mitigation bank proposals.[2]
 1. Is siting a wetlands mitigation bank subject to the Growth Management Act (GMA), including the GMA provisions relating to the maintenance and enhancement of the agriculture industry and the protection of lands designated as agricultural lands of long-term commercial significance?
The GMA is found in RCW 36.70A. The GMA contemplates two types of actions by local governments, which must be distinguished. First, the GMA requires most counties and cities in Washington to develop and adopt comprehensive land use plans and development regulations that implement the comprehensive plans. See RCW 36.70A.040 (describing which local governments must comprehensively plan and how development regulations implement *Page 5 
comprehensive plans). Second, the local government applies its comprehensive plan and development regulations to specific permitting decisions and land uses. RCW 36.70B.030 (describing process for project review related to individual permit applications).[3]
When adopting plans and regulations, counties and cities acting under the GMA must designate and assure the conservation of certain resource lands, including agricultural, forest, and mineral resource lands. RCW 36.70A.040(3), .060, .170. These same sections of the GMA require that counties and cities designate critical areas. RCW 36.70A.172(1) then adds the requirement that the functions of the designated critical areas be protected. The GMA goals also call for the designation, maintenance, conservation, and enhancement of agricultural lands of long-term commercial significance, as well as critical areas such as wetlands.See, e.g., RCW 36.70A.020(8)-(10). Thus, if a city or county is adopting or amending its comprehensive plan or development regulations under the GMA, it is subject to the agricultural lands conservation provisions in RCW 36.70A.060, .170, and .177. Those agricultural lands conservation provisions have been interpreted most prominently in City of Redmond v.Central Puget Sound Growth Management Hearings Board, 136 Wn.2d 38
(1998), King County v. Central Puget Sound Growth Management HearingsBoard, 142 Wn.2d 543 (2000), and Lewis County v. Western WashingtonGrowth Management Hearings Board, 157 Wn.2d 488 (2006).[4]
In contrast, a project-specific decision (such as issuance of a permit or site plan approval authorizing development of a wetlands mitigation bank) requires local government to apply development regulations to a particular proposed project. Project-specific decisions do not involve the application of the GMA planning directives, such as the provisions about agricultural lands. See RCW 36.70B.030(1) (individual projects are assessed based on existing regulations and do not present an opportunity to revisit the local decisions that adopted a plan or regulation). Instead, existing development regulations are presumed compliant with the GMA, absent a timely challenge. RCW 36.70A.320.[5] *Page 6 
The GMA thus distinguishes between adopting comprehensive plans and development regulations and applying such plans and regulations to a particular project. The GMA provisions concerning agricultural lands are used when adopting comprehensive plans and development regulations, but they are not directly applicable to an individual or entity developing a particular wetlands mitigation bank. Instead, existing plans and regulations (which were developed under the GMA) apply to project-specific siting and permitting decisions.[6]
 2. If, under either the pilot rule or a final adopted rule, theDepartment of Ecology certifies a proposed wetlands mitigation bank onland designated as agricultural land of long-term commercialsignificance, is a county legally obligated to permit a wetlandsmitigation bank, regardless of the above GMA requirements?
Certification of a wetlands mitigation bank is independent of the local land use regulation process. Therefore, a county would not be legally obligated to issue required permits for a wetlands bank based on Ecology's certification, regardless of existing development regulations.[7]
The language of the pilot rule confirms this conclusion. It expressly states that local government permitting and authorization continue to apply to wetlands mitigation bank proposals, even if certified by Ecology.
 (2) Mitigation banks certified under this rule must be consistent with existing federal, state and local laws and rules.
 (3) Certification of a wetland bank does not serve as authorization for other federal, state or local permits or approvals.
 (4) Mitigation Bank Review Team (MBRT) members shall advise the bank sponsor of pertinent federal state or local rules that may apply to a specific bank proposal and that may delay the certification process. *Page 7 
WAC 173-700-200(2)-(4) (2001 draft proposal). In particular, the pilot rules state that the wetlands mitigation bank must be"consistent with . . . state and local laws and rules" and that certification"does not serve as authorization for other . . . state or local permits or approvals." WAC 173-700-200(2), (3) (2001).
Moreover, under the pilot rules, Ecology and a bank proponent must evaluate if a proposed bank complies with"existing rules and ordinances" and identify the"applicable permits and authorizations" needed for the bank. See WAC 173-700-221(3)(b), (c) (2001). The certification can even be conditioned on obtaining such permits and authorizations.See WAC 173-700-233(1)(c) (2001) (Ecology certification may"identify additional terms and conditions"); WAC 173-700-320 (2001) (technical review team including the local jurisdiction must consider whether a proposed bank site is consistent with existing planning documents, such as watershed, zoning, or comprehensive land use plans and critical areas rules).
Beyond this language in the pilot rule, we see no statutory language to displace or preclude local government from requiring compliance with otherwise applicable development regulations. We note that RCW 90.84
requires the local jurisdiction in which the wetlands mitigation bank is located to be a signatory to the banking instrument. See
RCW 90.84.040(1) (requiring local jurisdiction's signature on bank instrument); see also WAC 173-700-234 (2001) (requiring local jurisdiction's signature if it concurs with Ecology's certification decision). In context, however, the local government's signature merely concurs in the certification that a particular wetlands bank would create mitigation credits if operated according to the instrument.
3. Does certification of a wetlands mitigation bank by the Departmentof Ecology make the GMA and the State Environmental Policy Act (SEPA)inapplicable?
Your third question asks whether certification of a bank by Ecology would make the GMA or SEPA (RCW 43.21C)"inapplicable." We have analyzed the application of the GMA in this context in response to questions 1 and 2, above. As explained next, we conclude that Ecology's certification of a wetlands mitigation bank does not make SEPA inapplicable.
SEPA applies when state or local government is involved in"major actions significantly affecting the quality of the environment." RCW 43.21C.030(c). Depending on the nature of the proposal and state action, SEPA may require evaluation of matters such as the environmental impacts of the proposed action, adverse environmental effects which cannot be avoided, alternatives to the proposed action, and irreversible and irretrievable commitments of resources involved in the proposed action.Id.
SEPA includes a number of exceptions in RCW 43.21C. Development or certification of a wetlands mitigation bank is not within any of the statutory exceptions. Similarly, we see no basis to apply any of the"categorical exemption" rules adopted by Ecology, which eliminate environmental review or the preparation of an environmental impact statement for certain actions. See WAC 197-11-800 to-890 (categorical exemptions); RCW 43.21C.110(1)(a) *Page 8 
(authority for categorical exemption rules). Therefore, in the absence of any exception or exemption, SEPA remains applicable to the state actions connected with a bank.
4. To what degree does certification of a wetlands mitigation bank bythe Department of Ecology have to comply with the requirements of theGMA?
Your last question asks whether Ecology's certification under the pilot rules must be in compliance with requirements of the GMA. We have explained above how the GMA applies to the adoption and amendment of comprehensive plans and development regulations, and how such regulations then apply to project-specific decisions. Certification of a wetlands mitigation bank by Ecology is not subject to the GMA requirements applicable to local governments that are adopting or amending a comprehensive plan or development regulations.
We trust that the foregoing analysis will be helpful to you.
Sincerely,
ROB MCKENNA Attorney General
JAY DOUGLAS GECK Deputy Solicitor General: pmd
[1] See generally Version 1 Washington Department of Ecology, US Army Corps of Engineers, and Environmental Protection Agency Region 10,Wetland Mitigation in Washington State Part 1: Agency Policies andGuidance, at 25 (Mar. 2006) (document may be found at www.ecy.wa.gov/biblio/0606011a.html, last visited Nov. 15, 2007).
[2] Ecology's proposal and history of implementing the pilot rule is on its website, which reports that Ecology has continued to apply the pilot program through fiscal year 2007. See
http://www.ecy.wa.gov/programs/sea/wetlands/mitigation/banking/pilot.html (last visited Nov. 13, 2007).
[3] Development regulations are defined as controls placed on development or land use activities. Development regulations include zoning ordinances, critical areas ordinances, shoreline master programs, official controls, planned unit development ordinances, subdivision ordinances, and binding site plan ordinances. RCW 36.70A.030(7). The GMA requires local government to periodically review and, if necessary, revise comprehensive plans and development regulations to ensure continuing compliance with the GMA. RCW 36.70A.130. Amendments to development regulations can be timely appealed to the Growth Management Hearings Boards on the grounds that the regulations do not comply with the requirements of GMA. RCW 36.70A.280(1)(a).
[4] Your letter cites a recently amended statute and a particular case: (1) Laws of 2006, ch. 147 (informally known as SHB 2917), which amended RCW 36.70A.177 to allow different zoning techniques and accessory uses in designated agricultural lands; and (2) King County v.Central Puget Sound Growth Management Hearings Board, 142 Wn.2d 543
(2000), which addressed the conversion of designated agricultural lands of long-term commercial significance to soccer fields. This new statute and the soccer fields case illustrate how the GMA provisions concerning agricultural lands apply to the adoption and amendment of comprehensive plans and development regulations.
[5] A number of court decisions have similarly held that superior courts reviewing a local decision are not authorized to address GMA violations allegedly embodied in a project-specific land use decision.See Peste v. Mason Cy., 133 Wn. App. 456 (2006); Somers v. SnohomishCy., 105 Wn. App. 937 (2001); Caswell v. Pierce Cy., 99 Wn. App. 194
(2000). The Washington Supreme Court recently affirmed this principle.See Woods v. Kittitas Cy., No. 78331-4 (Slip Opinion dated December 20, 2007), affirming Woods v. Kittitas Cy., 130 Wn. App. 573 (2005).
[6] This conclusion might, therefore, result in the following application of the GMA to a hypothetical wetlands mitigation bank: If a specific wetlands mitigation bank required a change to a comprehensive plan or development regulations, then the amendments to the plan and regulations can be subject to relevant GMA provisions concerning agricultural lands.
[7] Your question was phrased as"regardless of the above GMA requirements," which suggests that the GMA requirements might independently apply to a specific wetlands mitigation bank. As explained in response to Question 1, the GMA requirements regarding agricultural lands of long-term significance apply to comprehensive plans and regulations, not to project-specific permitting or siting decisions. Our answer, therefore, focuses on whether Ecology certification displaces otherwise applicable local development regulations.