123 P.3d 883 (2005)
130 Wash.App. 573
Cecile B. WOODS, Respondent,
v.
KITTITAS COUNTY, a political subdivision of the State of Washington, Evergreen Meadows LLC, and Stuart Ridge LLC, Steele Vista LLC, and CLE Elum's Sapphire Skies, LLC, Appellants.
No. 23692-7-III.
Court of Appeals of Washington, Division 3, Panel Three.
November 29, 2005.
Reconsideration Denied January 17, 2006.
*884 Michael J. Murphy, Groff, Murphy, Trachtenberg & Everard PLLC, William J. Crittenden, Attorney at Law, Seattle, WA, James E. Hurson, Kittitas County Prosecuting Attorney's Office, Ellensburg, WA, for Appellant.
James C. Carmody, Velikanje, Moore & Shore PS, Yakima, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 In January 2004, three landowner-companies applied for a rezone of approximately 252 acres in Kittitas County from forest and range (allowing one dwelling per 20 acres) to rural-3 (allowing one dwelling per 3 acres). The Kittitas County board of *885 commissioners approved the rezone and adopted Ordinance 2004-15 to implement it. Neighboring landowner Cecile Woods filed a land use petition challenging the rezone. In a December 2004 order, the Yakima County Superior Court granted the petition and reversed.
¶ 2 Kittitas County and the landowner-companies appeal, contending the superior court lacked jurisdiction to decide the petition and erred in concluding that the rezone was inconsistent with the Growth Management Act (GMA), chapter 36.70A RCW. Although we find that the superior court had jurisdiction over the land use petition, we conclude that the court erred in addressing the rezone's compliance with the GMA, and reverse.

FACTS
¶ 3 Cle Elum's Sapphire Skies LLC, Evergreen Meadows LLC, Stuart Ridge LLC, and Steele Vista LLC (hereafter referred to collectively as CESS) own approximately 252 contiguous acres of land zoned forest and range in Kittitas County.[1] The minimum lot size on forest and range land is 20 acres. Kittitas County Code (KCC) 17.56.040. Permitted uses include single family homes, mobile homes, cabins, duplexes, agriculture, forestry, mining, and approved "cluster subdivisions." KCC 17.56.020. Directly north of the CESS property is zoned rural-3, east and west of the property is zoned forest and range, and south of the property is zoned commercial forest. The northern rural-3 and the eastern forest and range properties have been subdivided and developed for residential purposes.[2]
¶ 4 In January 2004, CESS applied for a rezone of its property from forest and range to rural-3. The minimum lot size in rural-3 zones is three acres for lots served by individual wells and septic tanks. KCC 17.30.040. As with the forest and range zone, the rural-3 zone allows one-half acre lots in platted cluster subdivisions served by public water and sewer systems. KCC 17.30.040. Permitted uses in rural-3 zones are similar to permitted uses in forest and range zones, although mining is allowed only as a conditional use. KCC 17.30.020, .030.
¶ 5 The predominant differences between the two zones are in their allowed densities and their purposes. As stated in the county code, "[t]he purpose and intent of the Rural-3 zone is to provide areas where residential development may occur on a low density basis. A primary goal and intent in siting R-3 zones will be to minimize adverse effects on adjacent natural resource lands." KCC 17.30.010. The purpose of the forest and range zone "is to provide for areas of Kittitas County wherein natural resource management is the highest priority and where the subdivision and development of lands for uses and activities incompatible with resource management are discouraged." KCC 17.56.010.
¶ 6 After a public hearing held in April 2004, the Kittitas County planning commission voted five to one to forward the rezone request to the county board of commissioners for approval. The one planning commissioner who voted against the rezone expressed concern about the adequacy of the water supply for future development. In May 2004, the board of commissioners unanimously approved the rezone in a closed meeting. Ordinance 2004-15 adopting the rezone was filed on June 1, 2004.
¶ 7 Ms. Woods owns approximately 33 acres adjacent to the CESS property. In June 2004, she filed a petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the ordinance in the Yakima County Superior Court. After concluding it had jurisdiction over the site-specific rezone petition, the superior court decided that the rezone was inconsistent with the GMA because it allowed development "urban in nature" in a rural area. Clerk's Papers (CP) at 16. On this basis, the court reversed the decision to rezone and denied *886 CESS's motion for reconsideration. CESS and Kittitas County filed separate briefs on appeal.

SUPERIOR COURT LUPA JURISDICTION
¶ 8 CESS first contends the trial court lacked subject matter jurisdiction under LUPA to consider whether the ordinance is consistent with the GMA. It argues that Ms. Woods is not really requesting review of a rezone from forest and range to rural-3, but is actually seeking to invalidate the rural-3 zone throughout the county. The trial court's subject matter jurisdiction to consider Ms. Woods' petition is a question of law reviewed de novo. Somers v. Snohomish County, 105 Wash.App. 937, 941, 21 P.3d 1165 (2001).
¶ 9 The GMA was enacted in 1990 to address problems associated with an increase in the state's population. Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 546-47, 958 P.2d 962 (1998). The GMA sought to alleviate the legislature's concern that
uncoordinated and unplanned growth, together with a lack of common goals expressing the public's interest in the conservation and wise use of our lands, pose a threat to the environment, sustainable economic development, and the health, safety, and high quality of life enjoyed by residents of this state.
RCW 36.70A.010. To that end, the legislature called for citizens, the local government, and the private sector to cooperate in "comprehensive land use planning." RCW 36.70A.010. Among the new requirements imposed on many of the state's counties and cities, the GMA required the development of a comprehensive plan that would address the elements of land use, housing, capital facilities, utilities, rural areas, and transportation. RCW 36.70A.040, .070; Skagit Surveyors, 135 Wash.2d at 547, 958 P.2d 962. The rural element of each county's comprehensive plan was to include lands that permitted rural development, forestry, agriculture, and a variety of rural densities. RCW 36.70A.070(5)(b). "To achieve a variety of rural densities and uses, counties may provide for clustering, density transfer, ... conservation easements, and other innovative techniques that will accommodate appropriate rural densities and uses that are not characterized by urban growth and that are consistent with rural character." RCW 36.70A.070(5)(b).
¶ 10 The legislature set out planning goals in RCW 36.70A.020 to guide the development of a comprehensive plan. Skagit Surveyors, 135 Wash.2d at 547, 958 P.2d 962. As in Skagit Surveyors, the two goals central to this case involve the designation of urban and rural development: (1) to "[e]ncourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner," and (2) to "[r]educe the inappropriate conversion of undeveloped land into sprawling, low-density development." RCW 36.70A.020(1), (2). Counties and cities are also urged to plan so as to preserve productive forest and agricultural lands and to increase access to natural resource lands. RCW 36.70A.020(8), (9). Ultimately the comprehensive plans adopted by the counties must "designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature." RCW 36.70A.110(1). Each city must be located within an urban growth area. RCW 36.70A.110(1).
¶ 11 In 1991, the legislature created the growth management hearings boards (GMHB) as the enforcement mechanism for the GMA. Skagit Surveyors, 135 Wash.2d at 548, 958 P.2d 962. These boards have very limited jurisdiction to invalidate all or part of comprehensive plans or development regulations that substantially fail to comply with the goals of the GMA. Id. at 549, 958 P.2d 962; Somers, 105 Wash.App. at 942, 21 P.3d 1165; RCW 36.70A.280(1)(a), .302. Development regulations are defined as "controls placed on development or land use activities by a county or city," including zoning ordinances. RCW 36.70A.030(7). However, a development regulation does not include a decision to approve a project permit application, "even though the decision may be expressed in a resolution or ordinance." RCW 36.70A.030(7). A site-specific rezone authorized by a comprehensive plan is a project *887 permit application. RCW 36.70B.020(4). Consequently, the GMHB does not have jurisdiction to hear a challenge to a site-specific rezone, even if the rezone is adopted as a county ordinance. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 179, 4 P.3d 123 (2000); Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 868, 947 P.2d 1208 (1997).
¶ 12 LUPA is the exclusive means for judicial review of land use decisions that are not subject to review by quasi-judicial bodies such as the GMHB. RCW 36.70C.030; Somers, 105 Wash.App. at 941-42, 21 P.3d 1165. Accordingly, if Ms. Woods' challenge is limited to the validity of the site-specific rezone adopted in Ordinance 2004-15, she properly filed a LUPA petition in superior court. However, if CESS is correct, and she is actually alleging that the rural-3 zone itself does not comply with the requirements of the GMA, then only the GMHB would have subject matter jurisdiction.[3]Wenatchee Sportsmen, 141 Wash.2d at 178, 4 P.3d 123.
¶ 13 Generally, the proponent of a rezone must show a substantial change in circumstances or that the proposed rezone implements policies of the comprehensive plan. Henderson v. Kittitas County, 124 Wash.App. 747, 754, 100 P.3d 842 (2004), review denied, 154 Wash.2d 1028, 120 P.3d 73 (2005). A party challenging a site-specific rezone through a LUPA petition must establish at least one of the following standards:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1). Ms. Woods' LUPA petition alleges the following errors, (as summarized by this court): (1) erroneous interpretation of the law; (2) incomplete evidence of changed circumstances or consistency with the comprehensive plan and the GMA; (3) unlawful procedure (failure to disclose conflicts of interest and ex parte communications); (4) violation of Ms. Woods' constitutional rights of procedural due process; and (5) clearly erroneous application of the law to these facts. Each assignment of error relates to the rezone from forest and range to rural-3. Consequently, on the basis of the relief sought in the petition, Ms. Woods necessarily sought relief under LUPA in superior court. Wenatchee Sportsmen, 141 Wash.2d at 179 n. 1, 4 P.3d 123.
¶ 14 CESS cites Somers to support its argument that Ms. Woods is actually challenging the validity of the county's rural-3 zoning classification, adopted by Kittitas County Ordinance 92-4 in 1992. In Somers, a developer in Snohomish County applied for approval of a subdivision on land zoned "Residential 20,000," allowing minimum lot sizes of 20,000 square feet. 105 Wash.App. at 939, 21 P.3d 1165. Although the proposed development was located outside the urban growth area established by the county in 1995, the subdivision was approved. Neighboring landowners sought review in the King County Superior Court under LUPA. They alleged that the proposed subdivision constituted urban growth outside an urban growth area in violation of the GMA. The superior court agreed.
¶ 15 On appeal, Division One of this court held that the superior court did not have *888 subject matter jurisdiction to consider the neighboring landowners' LUPA petition. Id. at 941, 21 P.3d 1165. Although the petitioners appeared to challenge a project permit application, they were actually collaterally challenging the county's Residential 20,000 zoning ordinance to the extent that it permitted urban density outside the urban growth area, a violation of the GMA. Id. at 943, 21 P.3d 1165. No one disputed that the proposed subdivision complied with the Residential 20,000 zone, which already existed at the time of the project permit application. Id. at 939, 21 P.3d 1165. The petitioners admitted in oral argument that their true position was that, to the extent the Residential 20,000 zone allows urban growth outside the urban growth area, any development authorized by this zone is not permitted by the GMA. Id. at 945, 21 P.3d 1165. Somers reiterated that only the GMHB has jurisdiction to determine whether a development regulation, such as a zoning ordinance, complies with the GMA. Id. at 944, 21 P.3d 1165. Holding that the LUPA process cannot be used to raise issues that should have been brought before the GMHB, Somers vacated the trial court's decision and reinstated approval of the proposed subdivision. Id. at 950, 21 P.3d 1165.
¶ 16 As discussed above, Ms. Woods raised several issues properly addressed in a LUPA petition pursuant to RCW 36.70C.130(1). Additionally, however, she alleged that CESS failed to present substantial evidence that the proposed rezone complied with the GMA. To the extent that she sought review of the rural-3 zone for compliance with the GMA, the superior court lacked subject matter jurisdiction. Somers, 105 Wash.App. at 945, 21 P.3d 1165.
¶ 17 Ms. Woods argues in response that Wenatchee Sportsmen establishes that the issue of a site-specific rezone's compliance with the GMA is properly raised in a LUPA petition. On the contrary, Wenatchee Sportsmen merely noted that the question of whether a rezone allows urban growth outside an urban growth area may be challenged in a LUPA proceeding that considers whether such a rezone is compatible with the urban growth area adopted in the county's comprehensive plan. 141 Wash.2d at 181-82, 4 P.3d 123. Consistency with the comprehensive plan is properly determined in a LUPA petition; compliance with the GMA is not.
¶ 18 Accordingly, we decline to address the rezone's compliance with the GMA and confine our review to the remaining assignments of error properly raised in the LUPA petition.

REZONING AND THE COMPREHENSIVE PLAN
¶ 19 CESS contends the board of commissioners correctly decided that the rezone was proper and consistent with the county's comprehensive plan. The superior court reversed, concluding that the rezone to rural-3 allowed for urban growth in a rural area in violation of the GMA. "On review of a superior court's decision on a land use petition, we stand in the same position as the superior court." Henderson, 124 Wash.App. at 752, 100 P.3d 842. Errors of law are reviewed de novo; evidentiary issues are viewed in the light most favorable to the party that prevailed in the highest fact-finding forum. Id. Because CESS prevailed before the board, we will view the record that was before the board in the light most favorable to CESS. Id.
¶ 20 Rezones are not presumed valid. Citizens, 133 Wash.2d at 874-75, 947 P.2d 1208. As noted above, proponents of a rezone have the burden of proof in showing (1) that conditions have changed since the original zoning, or that the proposed rezone implements policies of the comprehensive plan; and (2) that the rezone bears a substantial relationship to the public health, safety, morals, or welfare. Id.; Henderson, 124 Wash.App. at 752-54, 100 P.3d 842. Kittitas County additionally requires the rezoning proponent to establish the following:
a. The proposed amendment is compatible with the comprehensive plan; and
b. The proposed amendment bears a substantial relation to the public health, safety or welfare; and
c. The proposed amendment has merit and value for Kittitas County or a sub-area of the county; and
d. The proposed amendment is appropriate because of changed circumstances *889 or because of a need for additional property in the proposed zone or because the proposed zone is appropriate for reasonable development of the subject property; and
e. The subject property is suitable for development in general conformance with zoning standards for the proposed zone; and
f. The proposed amendment will not be materially detrimental to the use of properties in the immediate vicinity of the subject property; and
g. The proposed changes in use of the subject property shall not adversely impact irrigation water deliveries to other properties.
KCC 17.98.020(5).
¶ 21 The board found that the proposed rezone (1) was consistent with the rural land use designation of the county comprehensive plan; (2) was consistent with rural-3 zoning to the north and similar land use to the east; (3) protected public health, safety and welfare because it did not allow "high intensity uses" such as asphalt plants, landfills, sawmills, and airports, which are conditionally allowed in the forest and range zone (CP at 173); (4) had value to the county because it will increase the tax base; (5) was appropriate for three-acre development due to the surrounding zoning and developments; (6) was suitable for development in conformance with the rural-3 zoning standards; (7) would not be materially detrimental to the use of properties in the immediate vicinity because it limits the number of permitted and conditional uses; and (8) will not adversely impact irrigation deliveries because it is not located within an irrigation district. After we eliminate Ms. Woods' issues regarding compliance with the GMA, her remaining challenges are to findings (1), (3), (5), and (6).
¶ 22 I. Finding (1): Is the proposed rezone consistent with the comprehensive plan? According to undisputed findings in Ordinance 2004-15, the county comprehensive plan designated the area of the CESS property as rural in 1996. Ms. Woods argues that the comprehensive plan recognizes that a five-acre minimum lot preserves rural character. She quotes language from the plan in support:[4]
"There exists a generalization that five-acre minimum lot sizes might preserve `rural character.' The County Planning Department has GIS data showing over 603,716 acres eligible for consideration as rural land. If so, Kittitas County will retain rural character for a long time based on the five acre density criteria."
CP at 104 (quoting Kittitas County's comprehensive plan). Five-acre zoning apparently is not available in Kittitas County for its rural land, however. And as noted by CESS and by this court in Henderson, additional language in the comprehensive plan actually reveals a concern with the effects of the 20-acre minimum lots:
"State planners are concerned about `urban sprawl' with less than five acre minimum lot sizes. However, over the past fifteen to twenty years Kittitas County has experienced `rural sprawl' through the adoption of 20 acre minimum lot sizes, which has caused the conversion of farm land into weed patches. Small lot zoning with conservation easements for agriculture, timber, or open space may be preferable to the wasteful `sprawl' developments of large lot zoning and could be more conducive to retaining rural character."
Henderson, 124 Wash.App. at 755, 100 P.3d 842 (quoting Kittitas County's comprehensive plan). As we found in Henderson, at 756, 100 P.3d 842, the proposed rezone from forest and range 20-acre minimum lots to rural 3-acre minimum lots (agricultural 3-acre lots in Henderson) appears to implement this policy of the comprehensive plan. Strict compliance with a comprehensive plan is not determinative; only general conformance is required. Tugwell v. Kittitas County, 90 Wash.App. 1, 8, 951 P.2d 272 (1997). Consequently, the record supports the board's finding *890 that the proposed rezone is consistent with the comprehensive plan.
¶ 23 II. Finding (3): Does the proposed rezone bear a substantial relationship to the public health, safety, or welfare? A rezone must bear a substantial relationship to the county's health, safety, morals, or welfare. Schofield v. Spokane County, 96 Wash.App. 581, 587, 980 P.2d 277 (1999). The board found that the rezone to rural-3 lessened the number of "intense rural land uses" that are allowed in the forest and range zone. CP at 174. As explained above, permitted uses on rural-3 land are very similar to the permitted uses on forest and range land. The "high intensity" uses discussed by the board, including asphalt plants, airports, and sawmills, are only conditionally allowed on forest and range land. KCC 17.30.020,.030; KCC 17.56.020, .030; CP at 173. The board found that the rezone "protects public health, safety, and welfare, in an area with lots smaller than 20 acres in size." CP at 173. Although somewhat unclear, this language seems to indicate that, because the area near the CESS properties includes lots smaller than 20 acres in size, the rezone would protect public health, safety, and welfare by preventing such potentially disruptive uses near these smaller lots. This benefit is only hypothetical, of course, but any potential use authorized within a zone is hypothetical until its potential is realized.
¶ 24 Ms. Woods contends the planning commission acknowledged that there are deficiencies with regard to water availability for development of the CESS properties. In its State Environmental Policy Act (chapter 43.21C RCW) determination of nonsignificance, the county planning department gave a mitigated determination that there was no guarantee of adequate water or transportation for future development. However, these problems are related to prospective approval of a subdivision, not to the application for a rezone. Without specific plans to review, we cannot determine the impact of such plans on water resources. Henderson, 124 Wash.App. at 757, 100 P.3d 842.
¶ 25 Ultimately, we may not substitute our judgment for that of the board's. Schofield, 96 Wash.App. at 589, 980 P.2d 277. We may find "that the board made a clearly erroneous application of the law only if we are left with the firm conviction that it made a mistake." Henderson, 124 Wash.App. at 752, 100 P.3d 842. Here, the board's finding of a substantial relationship to the public health, safety, or welfare is not clearly a mistake. The finding is bolstered by the board's additional finding that the rezone will increase the tax base, which provides additional services to the local community. See Henderson, 124 Wash.App. at 756, 100 P.3d 842.
¶ 26 III. Finding (5): Is the rural-3 zone appropriate due to surrounding zoning and developments? The board found that the CESS property was appropriate for three-acre development because adjacent properties allow three-acre densities. Property north of the CESS property is already zoned rural-3 and property to the east, while zoned forest and range, was developed to a density similar to rural-3 before it was zoned forest and range. Although the area south of the CESS property is zoned commercial forest, one of the primary goals of the rural-3 zone is to "minimize adverse effects on adjacent natural resource lands." KCC 17.30.010. Accordingly, rezoning to rural-3 in an area near other rural-3 uses and adjacent to a natural resource land may be appropriate. At any rate, the record supports the board's finding and does not support a firm conviction that it made a mistake.
¶ 27 IV. Finding (6): Is the CESS property suitable for development in conformance with the rural-3 zoning standards? Ms. Woods notes that testimony before the planning commission indicated that only about 75 percent of the CESS property could be developed because the rest was steeply sloped. Additionally, one planning commissioner was concerned with the increased vehicle traffic on area roads and insufficient water when the property is developed. As discussed in section III above, these concerns are speculative and are more appropriate to the development phase of a project, not to the review of a site-specific rezone. The evidence before the board, viewed in the light most favorable to CESS, indicates that most *891 of the property is probably suitable for development that conforms to the rural-3 zone.
¶ 28 To summarize, the findings adopted by the board, viewed in the light most favorable to CESS, are supported by sufficient evidence in the record. Giving due deference to the board, we conclude that it did not make a clearly erroneous application of the law. Henderson, 124 Wash.App. at 752, 100 P.3d 842. Accordingly, we reverse the superior court and reinstate Ordinance 2004-15.
WE CONCUR: SWEENEY, A.C.J., and BROWN, J.
NOTES
[1] At the time of the April 2004 Kittitas County planning commission hearing, the property was referred to collectively as "Evergreen Meadows." Clerk's Papers at 126. The adopted ordinance names only Evergreen Meadows LLC, Stuart Ridge LLC, and Steele Vista LLC as the property owners. It is unclear from the record when Cle Elum's Sapphire Skies LLC became involved.
[2] Development in the eastern forest and range property predated the current zoning.
[3] In 1997, the legislature amended the GMA to allow direct review of comprehensive plans or development regulations in superior court if all parties to the proceedings agree in writing. RCW 36.70A.295; Skagit Surveyors, 135 Wash.2d at 567 n. 14, 958 P.2d 962. The parties here did not so agree.
[4] The parties to this appeal quote liberally from those sections of the Kittitas County comprehensive plan that support their arguments. They did not, however, include a copy of the comprehensive plan in the record on appeal. We limit our discussion of the actual language of the plan to those sections quoted in the record, the briefs, or Henderson.