252 P.3d 898 (2011)
GRAHAM NEIGHBORHOOD ASSOCIATION, a Washington nonprofit corporation, Ray Strub, George F. Wearn, and James L. Halmo, Respondents,
Pierce County, Defendant,
v.
F.G. ASSOCIATES, Appellant.
No. 65279-6-I.
Court of Appeals of Washington, Division 1.
May 31, 2011.
*900 William T. Lynn, Att. at Law, Tacoma, WA, for Appellant.
Scott Mann, Gendler & Mann LLP, Sea., WA, for Respondents.
DWYER, C.J.
¶ 1 Where a county ordinance mandates that land use permit applications not timely acted upon be cancelled, and such an application is cancelled pursuant to that ordinance, the county planning agency lacks the authority to thereafter reinstate that application in contravention of the pertinent ordinance. Such is consistent with our state's vesting statute, which confers upon the local legislative authority the ability to set forth requirements for project permit applications. Moreover, it is consistent with principles of administrative law requiring notice and public hearing prior to decision-making. Because, here, F.G. Associates' preliminary plat application was properly cancelled pursuant to county ordinance, and because reinstatement of that application by a county planning official was not authorized by the ordinance, we reverse the hearing examiner's decision granting approval of the preliminary plat application.

I
¶ 2 On April 25, 1996, F.G. Associates submitted an application for preliminary plat approval to the Pierce County Department of Planning and Land Services (PALS). F.G. Associates sought, through its application, to subdivide a 19.71-acre parcel of land for a project referred to as Mountain View Plaza. F.G. Associates submitted the application upon the advice of county planning officials, who had informed the developer that land use regulations would be amended on May 1, 1996 to prohibit certain commercial uses.
¶ 3 F.G. Associates filled out the preliminary plat application perfunctorily, providing very little information regarding the proposed uses of the land. The application stated that commercial uses were intended but did not specify any particular intended commercial use; instead, it requested only to sub-divide 19.71 acres in the Graham RAC [Rural Activity Center] into . . . six parcels with onsite sewage disposal. Appeal Bd. Record (ABR) at 283. In response to multiple questions regarding proposed uses, F.G. Associates simply stated do not know. ABR at 272-73. Moreover, many of the answers provided were flippant. In response to a query on the environmental worksheet, a document required to be filed as part of the application, F.G. Associates indicated that the noise impact of the project would include screams of exasperation from filling out tedious environmental checklist questions for preliminary plats. ABR at 277. F.G. Associates further indicated on the environmental worksheet that its proposed means of reducing that noise impact was sedatives. ABR at 277.
¶ 4 Correspondence between F.G. Associates and PALS indicates that PALS did not consider the application to be complete until May 1996. Because the initial preliminary plat application indicated that the developer sought to divide the property into only five lots, F.G. Associates initially paid the application fee amount corresponding to a request *901 for a five-lot subdivision. The additional payment required for a six-lot subdivision application was not paid until May 23, 1996. Notation on PALS' documents indicates that PALS considered the application to be complete on that date. Significantly, after the full fee was paid, PALS sent a letter to F.G. Associates stating that the application materials were received on May 23 and that the application has been reviewed by this department and is considered complete. ABR at 620.
¶ 5 In a 1998 PALS staff report regarding the history of F.G. Associates' Mountain View Plaza application, PALS reiterated that the application was not complete until May 1996:
An application was made to subdivide a 19.71-acre parcel into six (6) lots in a Rural Activity Center (RAC) on April 25, 1996. The initial application stated that the property was going to be divided into 5 lots and the applicant made payment for review of such on the date of application. It was discovered that the applicant desired a six (6) lot subdivision on the subject site, not five (5). [The application] was edited to reflect the change and the applicant was notified that payment for the additional lot was required prior to distribution. When payment was made, the applicant received a letter stating that on May 23, 1996, the application was complete.
ABR at 285. The staff report further stated that the application was deemed complete on May 23, 1996, after corrections were made to the description, increasing the proposal from 5 to 6 lots and the additional fee received and that the application did not stipulate any specific uses or intensities. ABR at 286.
¶ 6 On June 6, 2005, PALS sent a letter to F.G. Associates and its agent, informing them that the Mountain View Plaza preliminary plat application would become null and void one year from the date of the letter. The letter was sent pursuant to a newly-enacted county ordinance, Pierce County Code (PCC) 18.160.080, which provides for the expiration of applications not timely acted upon. The PALS status file for F.G. Associates' preliminary plat application indicates that the application would be cancelled if F.G. Associates did not respond to the letter before June 6, 2006. It further indicates that the application was, indeed, cancelled as of that date.
¶ 7 In January 2009, almost 13 years after filing its initial environmental worksheet, F.G. Associates filed an additional environmental worksheet for the Mountain View Plaza project. F.G. Associates indicated that it was submitting an additional environmental worksheet, nearly 13 years later, because the previous worksheet was prepared but found to be incomplete. ABR at 127.
¶ 8 That same year, F.G. Associates sought to have its Mountain View Plaza application approved by the Pierce County Hearing Examiner. Public hearings were held in April and July 2009. Neighbors concerned about the development project testified at the hearings.[1] They asserted that F.G. Associates was not entitled to develop the property as proposed because (1) the application was not complete as of April 25, 1996 and, therefore, the application was not vested as of that date; (2) any such vesting would be limited to the proposed uses in the April 25, 1996 application, which were significantly different than those proposed in 2009; and (3) the preliminary plat application had been cancelled by the county in June 2006.
¶ 9 Notwithstanding that PALS had previously indicated that the application was not complete until May 1996, a PALS staff report submitted to the hearing examiner stated that the application was accepted as completeand that F.G. Associates' rights were thereby vestedon April 25, 1996. An additional PALS staff report presented at the hearing asserted that Pierce County staff correctly `removed the cancellation' of F.G. Associates' application. ABR at 427. Indeed, the status file for the application states that the cancellation status was removed per Terry Belieua county planner at PALS on May 9, 2008. ABR at 300.
*902 ¶ 10 Belieu testified at the public hearing that the county's method for determining application completeness consisted solely of counting the number of documents submitted: Checking for a complete application . . . was not and is not reading the application material to determine if all of the questions are answered correctly or accurately. It's always a number count. It's always a matter of using . . . what we call now a submittal checklist. Report of Proceedings (RP) (July 23, 2009) at 3. Belieu further testified that the county's policy for determining completeness was simply to count the number of documents and to ensure that the correct filing fee had been paid.
¶ 11 Belieu also testified regarding the cancellation of F.G. Associates' application. He testified that the notice letter regarding cancellation, which was sent by county planning officials to project applicants that had not timely acted upon their applications, was sent to F.G. Associates on June 6, 2005. He further testified that PALS staff programmed their computers such that, one year after the notice letter was sent, those applications for which notices had been sent would be automatically cancelled. Belieu admitted that F.G. Associates did not respond to the cancellation notice letter. However, Belieu testified, F.G. Associates was in contact with PALS regarding supplemental applications, separate from the preliminary plat application for which the notice was sent, for the Mountain View Plaza project. For this reason, Belieu testified, he reactivated the preliminary plat application upon discovery that it had been cancelled in June 2006 pursuant to the notice letter sent to the developer one year earlier. RP (July 23, 2009) at 19.
¶ 12 In October 2009, the hearing examiner granted approval of F.G. Associates' Mountain View Plaza preliminary plat application. In his decision, the hearing examiner relied upon Belieu's testimony in determining that the Mountain View Plaza project had vested on April 25, 1996:
Mr. Belieu clearly testified that the County's method of determining whether or not an application is complete for vesting is whether or not the applicant has submitted the proper number of copies of documents required by the code. If they do it is deemed complete. No inspection of individual documents is done when the application is submitted[;] it is merely a counting process.
ABR at 38. He found it significant that the [a]pplicants [had] been working on this project for the past 13 years and [had] spent large volumes of money relying upon the original application. ABR at 38-39. With regard to the cancellation of the preliminary plat application, the hearing examiner found that
[t]he project was cancelled by the County computers in the 1997-1998 [sic] area. According to Mr. Belieu, at this time the computer cancelled the project even though the applicants were working with the County on wetland review and other processes. On May 9, 2008, when the cancellation was discovered, the Staff corrected the cancellation notice. There was no evidence submitted throughout the hearing process that the applicant ever received any notice of this cancellation and given the nature of the correspondence, it could have been easily misinterpreted. If the applicant received it, he could have believed it did not apply because the applicant was working with the County on various portions of the application. Given the overall confusion and the County's testimony, it would be unconscionable to cancel this project because of the computer glitch.
ABR at 39.
¶ 13 In January 2010, petitioners Graham Neighborhood Association, Ray Strub, George Wearn, and James Halmo (collectively referred to herein as Graham Neighborhood Association), pursuant to the Land Use Petition Act (LUPA), chapter 36.70C RCW, filed a land use petition challenging the hearing examiner's decision on multiple grounds. The petitioners contended that the hearing examiner erred both by determining that the application was complete as of April 25, 1996 and by ruling that the application had, therefore, vested to the land use regulations in effect prior to May 1, 1996. They additionally contended that the application had been cancelled and could not be reactivated by Belieu. The petitioners further asserted that *903 the hearing examiner erred by determining that the Mountain View Plaza project complied with various county land use standards.
¶ 14 On April 13, 2010, the superior court reversed the hearing examiner's decision.[2] The court determined that the hearing examiner erred by concluding that F.G. Associates' rights had vested on April 25, 1996. It found that the environmental worksheet submitted with the April 25 application was not fully completed as required by RCW 58.17.033(1).[3] Moreover, the court concluded that the county executive branch employees' lax practices of determining application completeness by counting the number of forms submitted are inconsistent with the requirements of the Pierce County Code. Clerk's Papers (CP) at 238. Because the superior court reversed the hearing examiner's decision based solely upon the issue of vesting, the court did not address the additional issues raised in Graham Neighborhood Association's LUPA petition.
¶ 15 F.G. Associates appeals.

II
¶ 16 In its decision reversing the hearing examiner's grant of approval of F.G. Associates' preliminary plat application, the superior court relied solely upon Graham Neighborhood Association's contention that the preliminary plat application was not fully completed in April 1996 and, thus, did not fully vest under the land use regulations in place at that time. However, subsequent to the superior court's decision, Division Two of this court issued its opinion in Lauer v. Pierce County, 157 Wash.App. 693, 238 P.3d 539 (2010), holding that a building permit application vests as a matter of law where the local government in receipt of the application does not provide written notice to the applicant within 28 days that the application is incomplete. In so holding, the court concluded that RCW 36.70B.070(4)(a) applies to the determination of whether an application is fully complete and, thus, whether the applicant's rights are vested under the land use regulations in place at that time.[4] The court indicated that its decision was the first to address whether a project permit application can vest as a matter of law pursuant to RCW 36.70B.070(4)(a). Lauer, 157 Wash.App. at 709, 238 P.3d 539.[5]
¶ 17 Our Supreme Court has since accepted review of the Lauer case. Lauer v. *904 Pierce County, 171 Wash.2d 1008, 249 P.3d 182 (2011). Thus, the Court of Appeals opinion in that case will not be the final word on the matter and is an uncertain authority during the pendency of the Supreme Court's consideration. In this situation, we could await our Supreme Court's opinion in that case in order to decide whether the superior court herein correctly determined that F.G. Associates' rights had not vested prior to May 1996, or we could attempt to resolve this case based upon the other issues raised in Graham Neighborhood Association's LUPA petition. We choose to do the latter.

III
¶ 18 At the outset, we note that F.G. Associates contends that those issues not addressed by the superior court in its review of the hearing examiner's decision cannot be considered for purposes of determining whether we should affirm the superior court's judgment. We disagree.
¶ 19 Our Supreme Court has taken two different approaches in a situation such as this, where the superior court does not address all of the issues raised in a LUPA petition and a party thereafter appeals from that court's decision. In Woods v. Kittitas County, 162 Wash.2d 597, 604-05, 174 P.3d 25 (2007), Woods filed a LUPA petition challenging on multiple grounds a local government decision approving a site-specific rezone. The superior court reversed the local government decision on the basis that the rezone did not comply with the Growth Management Act (GMA), chapter 36.70A RCW. Woods, 162 Wash.2d at 606, 174 P.3d 25. Because it was unnecessary to reach Woods' remaining LUPA claims in order to resolve the case, the superior court did not address them. Woods, 162 Wash.2d at 606, 174 P.3d 25.
¶ 20 On appeal, the Court of Appeals held that the superior court did not have jurisdiction under LUPA to determine whether the rezone complied with the GMA and, thus, the court declined to consider whether the rezone was in compliance with that statute. Woods v. Kittitas County, 130 Wash.App. 573, 583, 123 P.3d 883 (2005). However, the Court of Appeals reviewed the remaining LUPA issuesthose not addressed by the superior courtand concluded that the rezone was proper. Woods, 130 Wash.App. at 584-89, 123 P.3d 883. Woods petitioned our Supreme Court for review, contending, in part, that the Court of Appeals improperly reached those LUPA issues not addressed by the superior court, as Woods had not raised those issues on appeal to the Court of Appeals and the superior court had not decided them. Woods, 162 Wash.2d at 602, 174 P.3d 25. In determining whether it would reach the issues not addressed by the superior court, our Supreme Court concluded: Because we stand in the superior court's position on review of an administrative decision, Woods' remaining LUPA issues are properly before us. Woods, 162 Wash.2d at 603, 174 P.3d 25.
¶ 21 However, in a similar but earlier case, our Supreme Court declined to reach LUPA issues not addressed by the superior court, instead remanding to that court for a determination of those issues. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 173, 4 P.3d 123 (2000). In that case, Wenatchee Sportsmen Association (WSA) filed a LUPA petition in the superior court, seeking reversal of Chelan County's approval of a residential development project. Wenatchee Sportsmen, 141 Wash.2d at 172, 4 P.3d 123. The superior court granted the petition, finding that the project was inconsistent with county regulations adopted under the GMA. Wenatchee Sportsmen, 141 Wash.2d at 174-75, 4 P.3d 123. Our Supreme Court reversed the superior court's decision, holding that WSA could not challenge the validity of the rezone, which is not a development regulation, pursuant to the GMA; rather, the court held, the WSA could only challenge that action by filing a timely LUPA petition in response to the rezone itself, which WSA had failed to do. Wenatchee Sportsmen, 141 Wash.2d at 181-82, 4 P.3d 123. Upon reversing the superior court's decision on that specific basis, our Supreme Court then remanded the matter to the superior court for consideration of an issue in the LUPA petition that the superior court had not previously reached. Wenatchee Sportsmen, 141 Wash.2d at 182, 4 P.3d 123.
*905 ¶ 22 Thus, our Supreme Court has addressed this questionwhether an appellate court may reach those statements of error set forth in a LUPA petition not addressed by the superior courtin two different ways. The Supreme Court's actions can best be interpreted as establishing that the appellate court possesses the discretion to determine how best to proceed. We exercise our discretion, in this case, in favor of addressing the issues before us.

IV
¶ 23 One such issue, presented in Graham Neighborhood Association's LUPA petition but not addressed by the superior court in its review of the hearing examiner's decision, regards the cancellation of F.G. Associates' preliminary plat application.
¶ 24 With regard to the issue of cancellation, the petitioners contended in their LUPA petition that the hearing examiner (1) erred . . . in finding that the application was. . . cancelled . . . due to a computer glitch, and . . . in finding that the application had not been cancelled by the County; (2) erred. . . in finding that [F.G. Associates] did not have notice of the application cancellation; and (3) erred . . . in concluding that the County had the legal ability to `revive' the application after it had been cancelled. CP at 39. The petitioners further asserted that the hearing examiner erred in concluding that he had the ability to ignore the application's cancellation because it would be `unconscionable' to cancel the application and in concluding that the facts surrounding the cancellation were `unconscionable' and a result of a `computer glitch.' CP at 39.
¶ 25 This issue is dispositive.

V
¶ 26 Washington's vested rights doctrine provide[s] a measure of certainty to developers and . . . protect[s] their expectations against fluctuating land use policy. Noble Manor Co. v. Pierce County, 133 Wash.2d 269, 278, 943 P.2d 1378 (1997). The statute codifying that doctrine as it applies to subdivision applications provides that
[a] proposed division of land . . . shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.
RCW 58.17.033(1). The statute additionally provides that [t]he requirements for a fully completed application shall be defined by local ordinance, RCW 58.17.033(2), thus conferring upon the local legislative authority the power to determine what constitutes a fully completed application.
¶ 27 By adhering to a date certain vesting standard, the vested rights doctrine reflects a recognition that development rights represent a valuable and protectable property right." Erickson & Assocs., Inc. v. McLerran, 123 Wash.2d 864, 870, 872 P.2d 1090 (1994). However, a liberal vesting rule necessarily comes at a price:
Development interests and due process rights protected by the vested rights doctrine come at a cost to the public interest. The practical effect of recognizing a vested right is to sanction the creation of a new nonconforming use. A proposed development which does not conform to newly adopted laws is, by definition, inimical to the public interest embodied in those laws. If a vested right is too easily granted, the public interest is subverted.
Erickson, 123 Wash.2d at 873-74, 872 P.2d 1090. Indeed, when our Supreme Court adopted the vested rights doctrine, prior to the doctrine's legislative codification, the court balanced the private property and due process rights against the public interest by selecting a vesting point which prevents `permit speculation,' and which demonstrates substantial commitment by the developer, such that the good faith of the applicant is generally assured. Erickson, 123 Wash.2d at 874, 872 P.2d 1090.
¶ 28 In order to implement our state's vesting laws, the Pierce County Council adopted Chapter 18.160 of the Pierce County Code. See PCC 18.160.020. Consistent with *906 our state's vested rights doctrine, the ordinance is intended to provide property owners, permit applicants, and the general public assurance that regulations for project development will remain consistent during the lifetime of the application. PCC 18.160.020. In addition, it establishes time limitations on vesting for permit approvals and clarifies that once those time limitations expire, all current development regulations and current land use controls apply. PCC 18.160.020. In furtherance of this purpose, PCC 18.160.080 provides:
Any [land use permit] application . . . that was pending on July 28, 1996, that does not contain all submittal items and required studies that are necessary for a public hearing or has not been reviewed by the Hearing Examiner in a public hearing shall become null and void one year after registered notice is mailed to the applicant and property owner. A one time, one year time extension may be granted by the Hearing Examiner after a public hearing if the extension request is submitted within one year of the effective date of this Chapter and [the] applicant has demonstrated due diligence and reasonable reliance towards project completion.
This provision of the ordinance, setting forth time limitations on vesting for permit approvals, reflects the concern articulated by our Supreme Court that the vested rights doctrine, which is necessarily in tension with the public interest, may be improperly employed. Thus, in response to this concern, the Pierce County Council set forth a limitation to the vested rights doctrine in that county that, while not interfering with due process rights, requires that a land use application be acted upon in a timely manner. Moreover, PCC 18.160.080 is consistent with the authority conferred upon local legislative bodies by our state's vested rights statute. See RCW 58.17.033(2).
¶ 29 On June 6, 2005, pursuant to PCC 18.160.080, PALS mailed a certified letter to F.G. Associates, its agent, and its attorney, informing them that the Mountain View Plaza preliminary plat application would become null and void one year later. The letter provided:
This notice is provided to all applicants and property owners who on July 28, 1996, had pending land use applications which required additional information or studies necessary for public hearing, or have not yet been reviewed by the Pierce County Hearing Examiner.
In accordance with Title 18.160.080, the above-described applications shall become null and void one year from the date this registered notice is mailed to the applicant and property owner.
Once an application is determined to be null and void, all future land uses [sic] applications shall be reviewed for consistency with the applicable development regulations that are in effect on the date the application is accepted.
ABR at 301. The PALS status file for the application indicates that the letter was sent on June 6, 2005 and that the application would be cancelled if F.G. Associates did not respond by June 6, 2006. It further indicates that the application was, indeed, cancelled on that date. An additional notation states that the cancellation status was removed per Terry Belieu on May 9, 2008. CP at 300.
¶ 30 F.G. Associates summarily asserts in its brief on appeal that PCC 18.160.080 does not apply to its preliminary plat application because the developer's rights had vested under the land use regulations in effect prior to the adoption of that ordinance.[6] We disagree.
¶ 31 Pursuant to our state's vesting statute, a proposed division of land must be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances in effect at the time that the fully completed application is submitted. RCW 58.17.033. Because PCC 18.160.080 is neither a subdivision or short subdivision ordinance nor a zoning ordinance, the vesting statute applies only if it is a land use control ordinance. However, not all regulations *907 relating to land use are land use control regulations. See New Castle Invs. v. City of LaCenter, 98 Wash.App. 224, 237-38, 989 P.2d 569 (1999) (holding that transportation impact fees are not land use control ordinances).
¶ 32 Rather, land use control ordinances are those that exert a restraining or directing influence over land use. Westside Bus. Park, LLC v. Pierce County, 100 Wash. App. 599, 606-07, 5 P.3d 713 (2000); accord New Castle, 98 Wash.App. at 229, 989 P.2d 569. Moreover, `[t]he vested rights rule is generally limited to those laws which can loosely be considered zoning laws.' New Castle, 98 Wash.App. at 232, 989 P.2d 569 (alteration in original and internal quotation marks omitted) (quoting WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESK BOOK, § 97.8(2)(d) (3d ed. 1996)). Indeed, our legislature, in enacting RCW 58.17.033, stated that the statute was intended to prevent a development project from being `obstructed by enacting new zoning ordinances or building codes,' indicating that the application of the vesting statute is limited to those land use ordinances directly implicating uses of the land. New Castle, 98 Wash.App. at 231, 989 P.2d 569 (internal quotation marks omitted) (quoting Noble Manor, 133 Wash.2d at 277, 943 P.2d 1378).
¶ 33 The Pierce County ordinance provision at issue exercises neither a restraining nor a directing influence over land use projects; rather, it limits the county's vesting ordinance itself, ensuringconsistent with the principles underlying the vested rights doctrinethat developers are sufficiently invested in their projects such that due process concerns are implicated. This is consistent with the general principle that the vested rights doctrine not be applied more broadly than its intended scope, lest the expense to the public interest become too great. New Castle, 98 Wash.App. at 232, 989 P.2d 569. Thus, PCC 18.160.080 is not a land use control ordinance subject to the vesting requirements set forth in RCW 58.17.033.
¶ 34 Moreover, PCC 18.160.080 would be rendered meaningless were we to determine that those applications submitted prior to the ordinance's enactment are not subject to that ordinance. Such a construction would be improper. Sleasman v. City of Lacey, 159 Wash.2d 639, 646, 151 P.3d 990 (2007) (holding that full effect must be given to the language of an ordinance, with no part rendered meaningless or superfluous). Indeed, the entire purpose of the ordinancewhich, significantly, is set forth in the code chapter entitled vesting, not in the chapter relating to land use regulations themselvesis to provide a limitation on developer's vested rights. Given that the ordinance necessarily applies only to vested permit applications, the Pierce County Council could not have intended that such projects, due to their vested status, would be exempt from the ordinance.
¶ 35 The purpose of the vesting doctrine is to allow property owners to proceed with their planned projects with certitude. The purpose is not to facilitate permit speculation. Extended project delay is antithetical to the principles underlying the vesting doctrine. The Pierce County Council's action in adopting PCC 18.160.080 is in conformance with the constitutional concerns underlying the vesting doctrine.
¶ 36 Thus, even if F.G. Associates' rights had vested prior to the enactment of PCC 18.160.080, a decision that we need not make, its vested status would nevertheless be subject to the limitations set forth in that ordinance.

VI
¶ 37 Having determined that the pertinent ordinance is applicable herein, we now address whether F.G. Associates' preliminary plat application was, indeed, cancelled pursuant to that ordinance. We hold that it was.
¶ 38 By reactivating F.G. Associates' preliminary plat application, Belieu unilaterally assumed an authority not granted to him by the county legislative authority. Although RCW 58.17.033(2) confers upon the local government the authority to determine when land use applications are complete and how such applications must move forward, the statute explicitly grants such authority to the local legislative body. See RCW 58.17.033(2) (The requirements for a fully completed application shall be defined by local ordinance. *908 (emphasis added)). Thus, Belieu, an employee of PALS, an executive branch agency, had no independent authority to revive the preliminary plat application.
¶ 39 Indeed, in so doing, Belieu not only acted without the authority to do sohe acted in direct contravention of the pertinent act passed by the Pierce County Council, the local body possessing such authority. The pertinent ordinance provides that applications such as this preliminary plat application shall become null and void one year after registered notice is mailed to the applicant. PCC 18.160.080 (emphasis added). Moreover, the ordinance sets forth a means by which the applicant may seek to obtain an extension of the one-year deadline where necessary: A one time, one year time extension may be granted by the Hearing Examiner after a public hearing if the extension request is submitted within one year of the effective date of this Chapter and [the] applicant has demonstrated due diligence and reasonable reliance towards project completion.[7] PCC 18.160.080 (emphasis added). Thus, pursuant to county law, the only means to obtain an extension of the strict one-year cancellation deadline is by application to the hearing examinernot by request of a PALS planning official.
¶ 40 The means set forth by the Pierce County Council for applicants to request an extension of the cancellation deadline is consistent with general principles of administrative law requiring notice to the public and an opportunity to be heard prior to such a determinationno extension is granted pursuant to PCC 18.160.080 absent a public hearing. Here, Belieu reinstated the application in the absence of any discernable process and in the complete absence of public notice and hearing. Because Belieu both had no authority to revive the application and acted in direct contravention of the pertinent ordinance in so doing, his actions were a legal nullity.

VII
¶ 41 Given that F.G. Associates' preliminary plat application could not be reinstated by Belieu, no such application existed when the hearing examiner purportedly approved the application in 2009. Indeed, pursuant to the Pierce County Code, F.G. Associates was required to appeal the cancellation of its application to the hearing examiner within 14 days of the cancellation. See PCC 1.22.090. F.G. Associates did not do so. The hearing examiner nevertheless addressed the cancellation issue, finding that it would be unconscionable to cancel [the] project because of the computer glitch. ABR at 39. In other words, the hearing examiner assumed the authority to approve the preliminary plat application because he believed that it would be unconscionable to do otherwise. Such an attempt to create an equitable exemption from the 14-day time limit set forth in the Pierce County Code alludes to the doctrine of equitable tolling, pursuant to which a statute of limitations may be tolled in certain limited circumstances.[8]
¶ 42 Although a court may toll a statute of limitations where justice so requires, it must use the doctrine sparingly. Nickum v. City of Bainbridge Island, 153 Wash.App. 366, 378, 223 P.3d 1172 (2009). Narrow application of the equitable tolling doctrine is consistent with LUPA's overall purpose, which seeks to create `uniform, expedited appeal procedures and uniform criteria' for handling land use challenges. Nickum, 153 Wash.App. at 378-79, 223 P.3d 1172 (quoting RCW 36.70C.010). `The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the *909 exercise of diligence by the plaintiff.' Nickum, 153 Wash.App. at 379, 223 P.3d 1172 (quoting Millay v. Cam, 135 Wash.2d 193, 206, 955 P.2d 791 (1998)). `Assuming that a failure to exhaust administrative remedies can be cured through the application of equity, equity cannot be invoked in the absence of bad faith on the part of the defendant and reasonable diligence on the part of the plaintiff.' Nickum, 153 Wash.App. at 379, 223 P.3d 1172 (quoting Prekeges v. King County, 98 Wash.App. 275, 283, 990 P.2d 405 (1999)).
¶ 43 The equitable tolling doctrine may be employed to toll the administrative time limits for appeal of land use decisions set forth by county ordinances. See Nickum, 153 Wash.App. at 378, 223 P.3d 1172. Pierce County's 14-day time limit for appeals to the hearing examiner is such an administrative time limit. Thus, notwithstanding that F.G. Associates' application was cancelled and that the developer did not timely appeal from that cancellation, the hearing examiner may have believed that he was properly exercising equitable authority when he nonetheless approved the application.
¶ 44 However, even had F.G. Associates invoked the equitable tolling doctrine, the necessary predicates for application of that doctrine are not met here. There is no indication in the record that either Pierce County or Graham Neighborhood Association engaged in `bad faith, deception, or false assurances.' See Nickum, 153 Wash.App. at 379, 223 P.3d 1172 (quoting Millay, 135 Wash.2d at 206, 955 P.2d 791). More significantly, the requisite diligence on the part of F.G. Associates is unequivocally absent. Indeed, it is F.G. Associates' failure to exercise such diligence that resulted in the cancellation of its application and its subsequent failure to properly appeal from that administrative decision.
¶ 45 Because the equitable tolling doctrine does not apply here, the hearing examiner could not properly assume the equitable authority to absolve F.G. Associates of its failure to comply with county ordinances. Thus, the developer's preliminary plat application was properly cancelled as of June 6, 2006 and remains cancelled to this day.[9]
¶ 46 The hearing examiner's decision is reversed.
We concur: ELLINGTON and BECKER, JJ.
NOTES
[1] Among those who testified at the hearings were Ray Strub, George Wearn, and James L. Halmo, respondents herein.
[2] Pierce County has not appealed from the superior court's decision.
[3] RCW 58.17.033(1) provides:

A proposed division of land . . . shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.
[4] RCW 36.70B.070 provides, in relevant part:

(1) Within twenty-eight days after receiving a project permit application, a local government. . . shall mail or provide in person a written determination to the applicant, stating either:
(a) That the application is complete; or
(b) That the application is incomplete and what is necessary to make the application complete.
. . .
(4)(a) An application shall be deemed complete under this section if the local government does not provide a written determination to the applicant that the application is incomplete as provided in subsection (1)(b) of this section.
[5] Subsequent to its decision in Lauer, Division Two again addressed the issue of vesting in Julian v. City of Vancouver, ___ Wash.App. ___, ___ - ___, ___ P.3d ___ (2011). There, the LUPA petitioners contended that the hearing examiner erred by issuing a decision affirming the city's grant of preliminary plat approval. Julian, ___ Wash.App. at ___, ___ P.3d ___. Specifically, the petitioners asserted that the hearing examiner should have applied the 2005 version, rather than the 2007 version, of the applicable city ordinance. Julian, ___ Wash.App. at ___, ___ P.3d ___. The court held that, because the preliminary plat application vested in 2008, the 2007 version of the ordinance applied. Julian, ___ Wash.App. at ___, ___ P.3d ___.

In so doing, the court cited to RCW 36.70B.070, explaining that the statute was applicable to determining whether the plat application was complete for purposes of vesting. Notwithstanding its reference to that statutory provision, the court did not cite to its prior decision in Lauer. Julian, ___ Wash.App. at ___, ___ P.3d ___. Moreover, because the City, pursuant to RCW 36.70B.070(1), properly informed the applicant within 28 days that the application was complete, Julian, ___ Wash.App. at ___, ___ P.3d ___, RCW 36.70B.070(4)(a) which provides that an application is deemed complete if the local government does not provide such noticewas not applicable therein.
[6] Because F.G. Associates raises this issue solely in a footnote in its brief on appeal, we need not address it. See Clark County Pub. Util. Dist. No. 1 v. State of Wash. Dep't of Revenue, 153 Wash. App. 737, 761, 222 P.3d 1232 (2009). However, we choose to do so for the sake of completeness.
[7] Needless to say, F.G. Associates, in addition to failing to respond to the cancellation notice, did not seek to have the one-year cancellation deadline extended by the hearing examiner.
[8] Even were the cancellation a computer glitch, the time limit for appeal could not be disregarded simply for that reason. The objective of such a time limit is timely review of administrative decisionsanalogous to LUPA's stated purpose of timely judicial review. Vogel v. City of Richland, ___ Wash.App. ___, ___, ___ P.3d ___ (2011). Indeed, LUPA embodies the same principle expressed by Washington courts in pre-LUPA decisionsthat even illegal decisions must be challenged in a timely manner. Vogel, ___ Wash.App. at ___, ___ P.3d ___ (emphasis added). Thus, it is clear that administrative time limits for appeal may not be so easily brushed aside.
[9] Because this issue is dispositive, we need not further address the other claims of error set forth in the LUPA petition.